## FIDELITY & CASUALTY CO. OF NEW YORK v. LOVE.

(Circuit Court of Appeals, Fifth Circuit. November 19, 1901.)

### No. 1,019.

**1. LIFE INSURANCE—ACTION ON POLICY—SPECIAL LIMITATION.**

Whether the limitation contained in a life insurance policy requiring an action thereon to be commenced within six months after the death of the insured runs from the time of such death, or from the time the right of action accrued under other provisions of the policy, quære.[1]

**2. SAME—COMMENCEMENT OF ACTION—MISSISSIPPI STATUTE.**

Within the time limited by a policy of life insurance after the death of the insured a declaration was filed in an action thereon against the company. The statute of Mississippi, in which state the action was brought, provides that "an action shall for all purposes be considered to have been commenced and to be pending from the time of filing of the

---

[1] Conditions in policy as to time for bringing suit, see notes to Steel v. Insurance Co., 2 C. C. A. 473; Rogers v. Insurance Co., 35 C. C. A. 404.

declaration if a summons shall be issued thereon for the defendant." With the declaration was filed a waiver of summons and an entry of appearance for defendant, signed by an agent duly authorized to accept and acknowledge service of process. Subsequently, but after the expiration of the period of limitation, a summons was issued and served upon the same agent, who, so far as appeared, was the only person on whom it could have been served, and to such service defendant appeared. *Held,* that the action was commenced, within the meaning of the statute, on the day the declaration was filed.

3. SAME—ISSUE AS TO SUICIDE—DIRECTION OF VERDICT.

Where, upon the question of fact whether an insured committed suicide, while the evidence was quite conclusive that he shot himself, there was a conflict in the evidence directed to the question whether the shooting was intentional or accidental, the action of the trial court in refusing to direct a verdict for defendant on the issue will not be reversed by an appellate court.

4. SAME—DEFENSE OF SUICIDE—BURDEN OF PROOF.

The burden rests upon a life insurance company to establish a defense of suicide pleaded in an action on the policy.[2]

In Error to the Circuit Court of the United States for the Northern District of Mississippi.

Marcellus Green and Garner Wynn Green, for plaintiff in error.

Dodd & Luckett, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. This action was brought by Love, as administrator of D. B. Noah, on an accident policy executed by the Fidelity & Casualty Company of New York, insuring D. B. Noah. Judgment was rendered against the company in the circuit court.

The first contention of the plaintiff in error is that the suit is barred by the contractual limitation of six months. The policy provides that proof of death must be furnished the company "within two months from the time of death," that legal proceedings for recovery under the policy may not be brought "till after three months from the date of filing proofs at the company's home office," and that suit shall not "be brought at all unless begun in six months from the time of death." Noah's death occurred December 1, 1899. Proof of the death was received by the company at its home office "on or about January 8, 1900." The declaration was filed in court May 29, 1900, but no summons was issued on it till June 15, 1900. The contention is that the suit was not brought till the summons was issued, and, more than six months having elapsed from the date of the death (December 1, 1899) and the date of the summons (June 15, 1900), the action was barred. The first answer made to this contention is that the six-months contractual limitation did not begin to run till the right of action accrued. The policy provides that suit may not be brought on it till after three months from the date of filing proofs at the company's home office. If the limitation did not begin to run till three months after the proofs were filed, the six months had not expired when the summons was is-

2 Suicide as a defense to action on life insurance policy, see notes to Ætna Life Ins. Co. v. Florida, 16 C. C. A. 623; Casualty Co. v. Egbert, 28 C. C. A. 284.

sued, June 15, 1900. The view that the limitation does not begin to run in such cases till the right of action accrues is sustained by many adjudicated cases and text writers. 2 Bac. Ben. Soc.. & Life Ins. §§ 446, 448, and cases there cited; 4 Joyce, Ins. § 3188, and cases there cited. The contrary view—that the limitation begins to run from the date of the death—is held by other courts. Griem v. Casualty Co., 99 Wis. 530, 75 N. W. 67; Chambers v. Insurance Co., 51 Conn. 17, 50 Am. Rep. 1; Johnson v. Insurance Co., 91 Ill. 92, 33 Am. Rep. 47. The question was referred to, but not decided, in Thompson v. Insurance Co., 136 U. S. 287, 298, 10 Sup. Ct. 1019, 34 L. Ed. 408. In Steel v. Same, 47 Fed. 863, it was held by the United States circuit court, district of Oregon, that the limitation began to run from the date of the death; but this decision was overruled on error to the United States circuit court of appeals, Ninth circuit, by a divided court, the majority holding that the limitation did not begin to run till the right of action accrued. 2 C. C. A. 463, 51 Fed. 715. And this last decision, on certiorari to the supreme court, was affirmed, without an opinion, by a divided court. 154 U. S. 518, 14 Sup. Ct. 1153, 38 L. Ed. 1064. There is, however, another view of this question, that makes it unnecessary for us to decide between these conflicting authorities. The death occurred December 1, 1899. The declaration was filed May 29, 1900, 5 months and 28 days after the death. The following is the Mississippi statute in reference to the beginning of an action:

"Filing Declaration the Commencement of an Action. Except in cases in which it is otherwise provided, the manner of commencing an action in the circuit court shall be by filing in the office of the clerk of such court a declaration, on which a summons for the defendant shall be immediately issued, and an action shall, for all purposes, be considered to have been commenced and to be pending from the time of filing of the declaration, if a summons shall be issued thereon for the defendant, and if not executed, other like process in succession may be issued, in good faith, for the defendant."

If there had been no delay in the issuance of the summons, the action was clearly to be considered as pending from the time of filing the declaration. John M. Fletcher was the agent of the defendant company, duly authorized to "accept and acknowledge service of process." When the declaration was filed, Fletcher waived the issuance of summons by the following writing:

"I, John M. Fletcher, agent for the Fidelity & Casualty Co. of New York, in Attala Co., Miss., do hereby enter an appearance for said company to this suit, and hereby waive the issuance of service of summons, and hereby agree for said company to appear and plead to said action as fully and for all purposes as though it had been duly summoned to appear as the law directs in such cases.

"This May 29, 1900.                              John M. Fletcher, Agent.
"Filed May 29, 1900.             J. H. Sullivant, Circuit Clerk,
                                              "By M. A. Clark, D. C."

If a summons had been issued May 29, 1900, it does not appear that it could have been served, except on Fletcher as the agent of the company. When, on June 15, 1900, the summons was issued, it was on the same day served on Fletcher. It was sought to avoid the effect of Fletcher's waiver of service by showing that he was the guardian of Noah's children, and occupied a position antagonistic

to the company. It does not appear that there was any other agent or officer of the company on whom service could have been made, or who was authorized to waive issuance of the summons. And when service was made on Fletcher, on June 15th, the company recognized the service as valid, and appeared and filed pleas. There is nothing to indicate that Fletcher intended or did any wrong in waiving the issuance of the summons. If he had made no waiver, and the summons had issued and been served on May 29th, the date of the waiver, the service would have been as legal as the one subsequently made on June 15th, which was recognized by the company as sufficient to cause it to appear and plead. These facts, we think, show that this action was commenced on May 29, 1900, and within less than six months from the date of Noah's death.

The policy on which the action is brought contained this provision:

"In case of injuries, fatal or otherwise, intentionally inflicted on himself by the assured, or inflicted upon himself or received by him while insane, the measure of the company's liability shall be a sum equal to the premium paid; the same being agreed upon as in full liquidation of all claims under this policy."

The important question of fact in the case was whether or not the deceased committed suicide.

It is assigned as error that the trial court refused to give peremptory instructions to find for the defendant. The trial court, under certain conditions, has the right to direct a verdict one way or the other. A case, however, is not to be ordinarily taken from the jury. The jurors are the recognized triors of questions of fact. When the judge, who has the same opportunity that the jurors have for seeing the witnesses and for noting all those occurrences in a trial not capable of record, forms the deliberate opinion that there is no excuse for a verdict save for one party, and so rules by instructions, an appellate court will pay much respect to his conclusions. And, on the other hand, "it is seldom that an appellate court reverses the action of a trial court in declining to give a peremptory instruction for a verdict one way or the other." Patton v. Railway Co., 179 U. S. 658, 660, 21 Sup. Ct. 275, 276, 45 L. Ed. 361. Whether Noah committed suicide or not was a question of fact. He was found dead on his bed, only partly dressed, with his feet on the floor, with a pistol loosely grasped in his hand. There was some evidence as to the range of the ball that passed through his head, which tended, or at least was offered, to show that he did not fire the fatal shot. But if it be conceded, as the weight of the evidence seemed to show almost, if not quite, conclusively, that the deceased held the pistol that fired the shot, it is not absolutely certain that he committed suicide. No one saw the shooting. Whether it was accidental or intentional is a matter of surmise. There is evidence tending to show that he was despondent and probably tired of life, and evidence tending to the contrary. There is conflict even as to the wound and its location. The evidence is not entirely inconsistent with the theory of accidental killing. Under the circumstances, it cannot be said that beyond dispute he committed suicide. The evidence is presented in detail and at length in the record, and it would serve no

useful purpose to state it. In a case very much like this one in many of its features the supreme court has recently held that the trial court did not err in submitting the question of suicide to the jury. Supreme Lodge v. Beck, 181 U. S. 49, 21 Sup. Ct. 532, 45 L. Ed. 741. We think the court did not err in refusing to instruct the jury to find for the defendant.

After instructing the jury as to what was required to make out a prima facie case, the court charged the jury, in effect, that the burden of proof was on the defendant to sustain its plea that the injury which caused the death of Noah was purposely inflicted upon himself. We think there was no error in the charge. The defendant was bound to establish the defense by evidence outweighing that of the plaintiff. Association v. Sargent, 142 U. S. 691, 12 Sup. Ct. 332, 35 L. Ed. 1160.

The judgment of the circuit court is affirmed.