METROPOLITAN LIFE INS. CO. v. WILLIAMSON.

(Circuit Court of Appeals, Fifth Circuit.   October 4, 1909.)

No. 1,775.

**1. INSURANCE (§ 668*)—LIFE INSURANCE—ACTION ON POLICY—SUICIDE—WHEN QUESTION FOR JURY.**

Whether or not an insured, who died from the effects of an overdose of morphine, took the overdose accidentally, or with suicidal intent, so as to release the insurance company from liability on its policy under its terms, is a question of fact, which, unless the evidence is conclusive, is for a jury to determine.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1745; Dec. Dig. § 668.*

Suicide as a defense to a life policy, see notes to Ætna Life Ins. Co. v. Florida, 16 C. C. A. 623; Fidelity & Casualty Co. v. Egbert, 28 C. C. A. 284.]

**2. INSURANCE (§ 668*)—ACTION ON LIFE POLICY—QUESTIONS FOR JURY—DELIVERY OF POLICY.**

Where a life insurance policy was found among the other papers of the insured after his death, and there was a conflict in the evidence as to whether it was delivered by an agent of the company, or merely left with the insured for examination, which was contrary to the rules of the company, the question of delivery was one for the jury.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 668.*]

**3. INSURANCE (§§ 141, 665*)—LIFE INSURANCE—WAIVER OF CONDITIONS.**

Although a life insurance company may have given its agents printed instructions not to take notes for first premiums, such rule or a like condition in a policy may be waived by the company, and the fact that it has been waived may be shown by either direct or circumstantial evidence.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 256–261; Dec. Dig. §§ 141, 665.*

Authority of insurance agent to waive prepayment of premiums, see note to Smith v. Provident Sav. Life Assur. Soc., 13 C. C. A. 292.]

**4. INSURANCE (§ 668*)—ACTION ON LIFE POLICY—QUESTIONS FOR JURY—WAIVER OF CONDITION.**

Where an agent of defendant life insurance company was instructed, by the company not to take notes for first premiums, nor to deliver policies until the first premium was paid in cash, and the policy contained a similar condition, but the agent admitted that he took such notes for perhaps 50 per cent. of the first premiums contracted for by him, and that he did so in case of plaintiff's husband, who died having the policy in his possession, the note being payable to the agent personally, and a letter from the president of the company to decedent was in evidence which

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

recognized decedent as a policy holder, such evidence was sufficient to warrant the submission to the jury of the question whether defendant had not knowingly waived such condition.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 668.*]

Pardee, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Northern District of Alabama.

Action by Eliza A. Williamson against the Metropolitan Life Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

W. G. M. Thomas and Richard W. Walker, for plaintiff in error.

J. L. Andrews, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. This is an action on an insurance policy issued by the plaintiff in error, payable to the defendant in error, for $5,000, on the life of Lawrence L. Williamson. The case was tried in the court below, and resulted in a verdict and judgment against the company for the amount of the policy. The main contention here is that the trial court should have instructed the jury to find for the company: (1) Because of defenses presented under the suicide clause of the policy; and (2) because the first premium was never paid, nor the policy delivered.

1. One of the conditions of the policy was that, "if the insured * * * die by his own hand or act. * * * the company shall not be liable. * * *" The insured died from the effects of a dose of morphine. There was evidence, consisting of oral declarations made by him shortly before his death and of letters written by him, tending to show that the morphine was taken by him with suicidal intent. But the letters were susceptible of the construction that the morphine was taken to alleviate pain and to secure sleep. The evidence showed that the insured had a wife and children, with whom he lived and to whom he was devoted. There was nothing in the evidence to show a reason for self-destruction. For several days before his death, he had suffered from neuralgia or other painful affliction, which deprived him of sleep. On the day of his death, at his wife's suggestion he returned home from his place of business about 10:30 o'clock in the morning for the purpose of getting needed sleep. When he reached home, he went with his wife to a quiet part of the house, and his wife left him there. Whether he took the morphine with suicidal intent or not is a question of fact. No one can read all the evidence, and say that it conclusively and unquestionably shows that he did so. It is not inconsistent with the evidence to conclude that he took an overdose accidentally—that he intended only to take an amount sufficient to relieve his suffering and to secure sleep. The trial court clearly should not be reversed for submitting the question as to suicide to the jury. The authorities on this point, in cases involving the same question, are conclusive. *Pythias Knights' Supreme Lodge v. Beck,*

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

181 U. S. 49, 21 Sup. Ct. 532, 45 L. Ed. 741; Fidelity & Casualty Co. v. Love, 111 Fed. 773, 49 C. C. A. 602; National Union v. Fitzpatrick, 133 Fed. 694, 66 C. C. A. 524.

2. There are several provisions in the policy to the effect that it is not to be binding till the actual payment of the premium and its acceptance by the company. We quote one:

"No obligation is assumed by this company upon this policy until the first premium has been paid and the policy duly delivered."

The contention of the company is that the jury should have been instructed for the defendant, because there was (1) no delivery of the policy and (2) no payment of the premium.

After the death of the insured, the policy was found among his other insurance policies and important papers in a trunk. Proof was offered of the declarations of Jackson, one of the company's agents, who had solicited Williamson to insure, that he had delivered the policy. The agents of the company testified that they had left the policy in the possession of Williamson; but their evidence tends to show it was so left for examination by Williamson. The record shows, however, that by the company's rules governing agents they were not permitted to leave a policy with an applicant for insurance before the actual payment of the premium:

"Specimen policy should be given to applicant who desires to hold and examine policy before paying premium."

From the facts shown by the record, the jury could reasonably have concluded that the policy was duly delivered.

Williamson did not pay the premium of $181.25 in cash. He gave his note for that sum, payable to the company's agent individually. It was a note waiving exemption, which means, under the local law, that the maker could not claim the benefit of the exemption laws against the enforcement of the payment of the note. The agent testified that he had no authority to take the note; but he admitted that it was his practice to take notes under such circumstances for the first premium. His admissions to other witnesses and his evidence on the stand tend to show that he took notes for the first premium for "50 per cent." of the business done by him. He denied that he had in any way notified the company that he had taken the note; nor was it shown, unless inferentially, that the company knew that it was his custom to take notes for the first premium. The agent testified that he had no authority to take the note or deliver the policy till the cash was paid, yet he cheerfully said that he would have collected the note if the insured, Williamson, "had kept on living." In this connection, it should be remembered that, when first approached on the subject after Williamson's death, the agent denied that he had taken a note from Williamson, but admitted it later, when it probably became apparent that proof could be made that he had shown the note to others. It is not reasonable that the agent would have done 50 per cent. of his business by taking notes for first premiums and that the company would have remained in ignorance of it. A letter was in evidence from the president of the company to the insured, which recognized

him as having placed "some insurance" with the company. The letter clearly refers to the policy in question here, or, at least, there is nothing in the record to show that it could have other meaning.

It is a matter of common knowledge that insurance companies seek to extend their business by employing many agents, to whom they pay large commissions. The record does not show, except inferentially, just what part of the first premium on Williamson's policy would have been retained by the agent. It does show that the agent wanted at least one-fourth of the amount of the note for the first premium raised in cash, thereby indicating that only one-fourth was to be sent to the company. It cannot be doubted that the company would so select its agents and so deal with them that it would not be likely to lose anything by the agents' taking a note for the first premium. It would, of course, be done at the agents' risk. Although the company may have given its agents printed instructions not to take notes for first premiums, such rule, or a like condition in a policy, may be waived by the company (Insurance Company v. Norton, 96 U. S. 234, 24 L. Ed. 689); and the fact that it has been waived may be shown by either direct or circumstantial evidence. It would be wholly unfair and unjust to permit the company to extend its business and increase its income by allowing its agents to take notes for the first premiums, deliver the policies to the insured as operative, and leave the company, which had knowledge of such dealings, free to enforce the collection of the notes if the insured lived, and to repudiate the whole transaction if he died. Insurance Company v. Wilkinson, 13 Wall. 222, 233, 20 L. Ed. 617.

Considering all the evidence in the record, we think it was sufficient to carry the case to the jury on the point now considered. The jury may reasonably have inferred that the company's agent received, and was authorized to receive, the note as payment of the premium, or that the company had knowledge of the fact that the agent was receiving notes for first premiums, and had so received this one, and that, therefore, the provision requiring a cash payment before the delivery of the policy was waived.

The judgment of the Circuit Court is affirmed.

PARDEE, Circuit Judge. In this case I am compelled to dissent from the conclusion reached by the majority. This is a suit by the widow of L. L. Williamson to recover the amount of a life insurance policy. The policy contains this provision:

"If the insured within two years from the issue hereof die by his own hand or act, whether sane or insane, the company shall not be liable for a greater sum than the premiums which have been received on this policy."

One of the pleas was that within one year from the date of said policy the said Williamson intentionally or voluntarily died by his own hand or act. The great preponderance of the evidence shows that Williamson died by his own act, and, in any case other than one on an insurance policy would require a verdict to that effect. I do not think that the trial judge committed reversible error in submitting this issue to the jury; but I do think he would have been fully warranted

in setting aside the verdict rendered, because it was contrary to the evidence.

The policy contains these provisions:

"(1) No obligation is assumed by this company upon this policy until the first premium has been paid and the policy duly delivered, nor unless upon the date of delivery insured is alive and in sound health."

"(5) Premiums are payable at the home office in the city of New York; but, at the pleasure of the company, suitable persons may be authorized to receive such payments at other places, but only on the production of the company's receipt, signed by the secretary and countersigned by the persons receiving the payments."

"(9) The contract between the parties hereto is completely set forth in this policy and the application therefor, taken together, and none of its terms can be varied or modified, nor any forfeiture waived or premiums in arrears received, except by agreement in writing, signed by either the president, vice president, secretary, or actuary, whose authority for this purpose will not be delegated. No other person has or will be given authority."

And the application, made a part of the policy, recites:

"The policy hereby applied for, if issued, shall not be in force until the actual payment of the premium and its acceptance by the company during the lifetime and good health of the person on whose life the insurance is applied for."

According to the undisputed facts in this case, the first premium was never paid, nor was the payment of said premium ever waived by the company. The only thing looking to a payment or a delivery of the policy was the fact that the local agents, without the knowledge or authority of the company, took a note payable to one of them some two months afterwards, and handed over the policy to the assured for examination, or, in the undisputed evidence of the agent, "to look over and see if it was what we told him it would be." There was some evidence, that ought to have been excluded, tending to show, but not proving, that there was a custom among insurance agents to take notes in payment of premiums. Under this state of contract and facts, it does not seem necessary to argue or cite authority to show that the defendant below was entitled to the affirmative charge requested. The contract is plain, the company did not waive, and the local agents had no right to, as was known and agreed to by Williamson.

As to any ratification by, or any estoppel against, the company, it can only be a pretense. The facts in Union Central Life Ins. Co. v. Robinson, 148 Fed. 358, 78 C. C. A. 268, 8 L. R. A. (N. S.) 883, decided by this court, are different from the case in hand; but the principles therein declared and followed, if applied here, require the holding that the acts of the local agents were in no sense binding on the insurance company.

Batson v. Fidelity Mutual Life Ins. Co., 155 Ala. 265, 46 South. 578, covers this case exactly, and I need say nothing more than quote:

"The third plea, on which issue was taken by the plaintiff, set up a failure by the assured to pay the initial premium on the policy, a nonpayment of which by the terms of the contract rendered the policy invalid. The provisions in the contract of insurance in the case before us are much the same as those in the case of Powell v. Prudential Ins. Co. of America, decided at the present term of this court and reported in 153 Ala. 611, 45 South. 208. The

principles of law stated in that case and the authorities there cited find ready application here. The contract here sued on provides in terms that it 'shall not be operative and binding until the actual payment of the initial premium and delivery of the policy during the lifetime and good health of the assured.' It is also stipulated in the contract and agreed to by the assured that no agent of the company has the power or authority 'to grant credit, or to extend the time for paying any premium, or to waive any forfeiture, or to bind the company by making any promise, or by making or receiving any representation or information; it being agreed that such power can only be exercised in writing by the president, vice president, actuary, or assistant actuary of the company, at its head office, and shall not be delegated.' The undisputed evidence is that the initial premium was never paid. The soliciting agent, who delivered the policy, together with the receipt introduced in evidence, instead of collecting and receiving from the assured the initial premium, as was his duty, and which only as such agent he had the authority and power to do, took the note of the assured for the initial premium, payable to himself individually at 30 days. This he had no authority to do, and the assured was informed of this want of authority in the agent by the terms of the contract. The note was never turned over to or accepted by the company, and it is not shown that the defendant company ever had any knowledge or notice of this act of the agent until after the death of the assured. The act of the agent in taking the note of the assured for the initial premium, without authority from the defendant company, and without any subsequent waiver on its part of the agent's unauthorized conduct, or ratification of said act of the agent, cannot in reason be said to constitute in law an actual payment of the initial premium within the meaning of the contract."

In Assurance Company v. Building Association, 183 U. S. 361, 22 Sup. Ct. 153 (46 L. Ed. 213), Mr. Justice Shiras, for the Supreme Court, says:

"What, then, are the principles sustained by the authorities, and applicable to the case in hand? They may be briefly stated thus: That contracts in writing, if in unambiguous terms, must be permitted to speak for themselves, and cannot by the courts, at the instance of one of the parties, be altered or contradicted by parol evidence, unless in case of fraud or mutual mistake of facts; that this principle is applicable to cases of insurance contracts as fully as to contracts on other subjects."

If this be so, then the case in hand was wrongly ruled and decided in the Circuit Court.