# ÆTNA LIFE INS. CO. v. TOOLEY.

(Circuit Court of Appeals, Fifth Circuit. December 2, 1926.)

No. 4760.

1. **Insurance ⬤═646(7)—In case of violent death, presumption against suicide is overcome by evidence consistent with suicide, but inconsistent with death by accident or act of another.**

In case of violent death, when natural causes are excluded, the presumption against suicide is overcome by evidence consistent with suicide, but inconsistent with any reasonable hypothesis of death by accident or by the act of another.

2. **Insurance ⬤═665(6)—Evidence held sufficient to defeat recovery on life policies on the ground of suicide of insured.**

The body of an insured, shot through the temple, was found in a car which he had driven alone from his home and stopped a short distance away, but out of sight from it. The bullet was of the caliber of his own revolver, which lay on the seat and had recently been fired. There were powder burns in and close around the wound. There was no robbery, or evidence of a struggle or an accident. He had for some time previously been in ill health, depressed, and despondent, though his business was prosperous, and his home life pleasant. *Held*, that such evidence was sufficient to defeat recovery on his life policies on the ground of suicide.

3. **Insurance ⬤═646(7)—Presumption against suicide may be overcome by preponderance of evidence.**

The presumption against suicide is subject to be overcome by a preponderance of the evidence.

Appeal from the District Court of the United States for the Western District of Texas; Charles A. Boynton, Judge.

Actions at law by Honto H. Tooley, individually and as independent executrix of the will and estate of William L. Tooley, deceased, against the Ætna Life Insurance Company. Judgments for plaintiff, and defendant brings error. Reversed.

Maury Kemp and Michael Nagle, both of El Paso, Tex., and Harry Preston Lawther, of Dallas, Tex., for plaintiff in error.

J. G. McGrady, of El Paso, Tex. (Lea, McGrady, Thomason & Edwards, of El Paso, Tex., on the brief), for defendant in error.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. On February 1, 1924, the Ætna Life Insurance Company issued three policies of insurance, for $25,000 each, on the life of William L. Tooley. In the event of death, one of the policies was made payable to the wife of the insured and the other two to his estate. On March 19, 1924, the insured died, and his wife brought two separate suits on the policies, one in her individual capacity, and the other as executrix of her husband's estate. These suits were consolidated for trial.

Each of the policies contains the following clause: "If the insured shall commit suicide within one year from the date hereof, while sane or insane, this policy shall be null and void, except for the legal reserve then existing hereon." Defendant, relying on this clause as a defense, pleaded that the insured committed suicide, and tendered back the legal reserve existing at the time of his death.

The trial resulted in a verdict and judgment for the plaintiff in each case for the full amount sued for. The only assignment of error we find it necessary to consider complains of the trial court's refusal, at the close of all the evidence, to give a peremptory instruction to the jury to find for the defendant.

Tooley, the insured, was found dead in his automobile about noon. The automobile was parked near the curb on a public street in a new, but thickly settled, suburb of the city of El Paso, Tex., by the side of a wide-spreading cedar tree, which obstructed the view in the direction of his home, less than two blocks away. Signs of tires dragging on the street indicated that the brakes had been applied for a distance of about 60 feet immediately before the automobile had been brought to a stop. The automobile was of the touring car type, and all curtains were up, except, perhaps, the one that belonged on the right side by the front seat. Tooley's body was lying or leaning on the front seat, with his head toward the right side, his left hand on the driving wheel on the left side, his right hand under his body, and his right foot on the foot brake.

When the body was lifted up, a .38 caliber Colt's pistol, on a .45 frame, was found un-

der it. The pistol was not self-cocking, but was of the ordinary single action type, that is cocked by hand before firing. There were two empty cartridges in the chamber, one of which had been freshly exploded; the other one appearing to have been empty for a long time. Tooley had been shot through the head with a .38 caliber bullet. The wound entered the right temple and came out about an inch above the left temple. There were powder burns in and immediately around the wound where the bullet entered, but they did not extend more than an inch away from the wound, indicating that the weapon which produced death was held against, or within a few inches of, the right temple. If that weapon had been held at a greater distance, either the powder burns would have scattered further away from the wound, or there would not have been any. The bullet with which Tooley was killed made an indentation in one of the bows of the car, at a point somewhat above and to the left of where the head of one sitting in the driver's seat would have been, and was found inside the car. There was a circular imprint on the right temple just outside the wound, and the undertaker gave it as his opinion that it was caused by some object pressing against the temple after death had occurred.

There was no evidence indicating that Tooley had been engaged in a struggle, or that any of his personal effects had been interfered with or taken. He owned several pistols, and there was some evidence that he had been in the habit of carrying a pistol on his person or in his automobile whenever he went to his ranch or other places in the country. Tooley had been a successful business man, engaged principally in banking and cattle raising. He had recently resigned as active vice president of a national bank, severed his connection with a mortgage company, of which he was president or vice president, and organized a mortgage company, having in view the leaving of an established business to his two sons. He had no financial troubles, and his home life was happy. However, for a year or more immediately preceding his death, he had been in bad health, had become despondent and obsessed with the mistaken idea that his old friends and business associates had ceased to value his friendship or to be interested in his welfare.

A short time before his death, he had undergone an operation on his tonsils, and had stated to one of his friends that he was sick in body and in mind, and that at times his mind would not function. Close friends of his testified that his wife told them that he was unable to sleep the night before his death, but was in a mentally depressed condition, and had said to her that, as all his friends had gone back on him, he might as well end it all; but his wife denied making these statements. On the morning of his death he was at his office, and appeared to those he met to be in a cheerful frame of mind. He left his office about 11 o'clock, purchased a box of .45 cartridges after the merchant had refused to break a box and let him have only five cartridges, and drove to his home, where he remained until a few minutes before his death, when he again drove away alone in his automobile.

[1] The presumption of the law is against suicide, and therefore defendant bore the burden of proving its plea that Tooley committed suicide. As this is a civil case, that burden of proof was sustainable by a preponderance of the evidence. Manifestly, it could not be sustained merely by evidence that was equally consistent with the inference that death was the result of an accident or was caused by the act of another. But in the case of a violent death, such as this was, where natural causes are excluded, the presumption against suicide is overcome, where the preponderance of the evidence is consistent with the theory of suicide, and is at the same time inconsistent with any reasonable hypothesis of death by accident or by the act of another. New York Life Insurance Co. v. Bradshaw (C. C. A.) 2 F.(2d) 457.

[2] Tooley left his home only a few minutes before his death, and was killed by his own pistol. The fact that powder burns were in the wound, and extended only slightly beyond the edge of it, indicated, according to the uncontradicted testimony, that the pistol was held against the temple, or very close to it. This evidence certainly is consistent with the theory of suicide. But it is said that Tooley had no motive to take his own life, because he was successful in business, had no financial or domestic troubles, and was interested in providing a place in the business world for his sons. However, it is not to be denied that successful business men, living in pleasant surroundings, do commit suicide. Ill health and a depressed or disordered mental condition frequently furnish the motive for suicide, even among the prosperous and those who have every reason to be satisfied with their lot in life. There is not a circumstance tending to show that in this case death was the result of accident.

It is suggested on behalf of plaintiff that the pistol might have been in a pocket on the right side of the automobile, and might have

been discharged accidentally, as Tooley was taking it out for the purpose of shooting a coyote or other wild animal, that could have been attracted into the suburb in which he lived in search of water or food. The theory is that upon seeing such an animal he instantly put on the brakes and at the same time reach for his pistol, which was caused to be discharged accidentally by the hammer being first caught against the side of the pocket, or some other object, and then released. But all this is mere conjecture. The car was stopped behind the cedar tree, where it could not be seen from the house. The record contains no evidence indicating that there were wild animals in the vicinity; but, even if there were, it would be a remarkable combination of circumstances that would cause Tooley's accidental death in the manner in which it occurred. Assuming that the pistol had been left in the pocket of the automobile after a trip to the ranch or into the country, it was not self-cocking, but was of the type that had to be cocked by hand. Of course, if the hammer had caught on some object and been suddenly released, it is possible that it might have been discharged. But at that distance the powder burns would have extended further away from the wound, or there would have been none at all.

Again, the bullet entered at one temple and, after going straight through the head, came out at the other, as is usual in so many cases of suicide. That the wound would have been at the same place in the event of an accidental discharge in the manner supposed is hardly possible. The fact that the bullet ranged upward would only indicate that the head was being held over to the right at the time the pistol was fired. The right hand and arm were not extended, as if Tooley had been reaching into the pocket on the right side of the car, but were under his body, as also was the pistol. There is not the slightest evidence that death resulted from the act of some one else, as in that event it would have to be inferred that he either found Tooley's pistol in the pocket of the car, or took it away from him and killed him with it. In either event, it is only reasonable to suppose that there would have been some evidence of a struggle. The circular imprint on the right temple just outside and partially in the wound does not tend to prove a struggle, but was such a mark as would naturally be caused after death by the pressure of some circular object. Easily enough Tooley's temple could have fallen against and rested on the barrel of the pistol which produced his death. The only reasonable inference to be drawn from the evidence,

construed most favorably for the plaintiff, is that the wound which caused death was self-inflicted. Insurance Co. v. Bradshaw, supra; New York Life Insurance Co. v. Weaver (C. C. A.) 8 F.(2d) 680; Bank v. Insurance Co., 11 F.(2d) 602.

Supreme Lodge v. Beck, 181 U. S. 49, 21 S. Ct. 532, 45 L. Ed. 741, relied on by plaintiff, is not in conflict with this conclusion. It is true, in that case the expressions were used that it was not "absolutely certain" and "beyond dispute" that the deceased committed suicide; but the holding there was merely that "the discharge of the gun may as well have happened from the careless conduct of a drunken man as from an intentional act." We do not understand that the Supreme Court intended to lay down the rule that the presumption against suicide prevails, except as against proof to an absolute certainty, or beyond any dispute, although that seems to have been the view of this court in the cases, also relied on by plaintiff, of Fidelity & Casualty Co. v. Love, 111 F. 773, 49 C. C. A. 602, and National Union v. Fitzpatrick, 133 F. 694, 66 C. C. A. 524.

[3] In our opinion, the presumption against suicide is subject to be overcome by a preponderance of the evidence, as appears from the more recent cases in this court which have been above mentioned.

The judgments are reversed, and the causes remanded for a new trial.