**MUTUAL LIFE INS. CO. OF NEW YORK v. GRAVES et al.**

Circuit Court of Appeals, Third Circuit.
March 3, 1928.

No. 3614.

**I. Insurance ⬩646(7)—To overcome presumption against suicide, evidence must leave no other reasonable hypothesis.**

To overcome the presumption against suicide, the evidence must show that the death was self-inflicted, or facts inconsistent with any reasonable hypothesis of death by accident.

**2. Trial ⬩142—Disputable facts present question for jury.**

Where the facts in a case are disputable, or of such character that different minds might reasonably draw different conclusions therefrom, it presents a question for the jury.

**3. Trial ⬩139(1)—Doubt as to presence of jury question requires submission to jury.**

A doubt as to whether a jury question is presented should be resolved in favor of submission to the jury.

**4. Insurance ⬩668(12)—Issue of suicide in action on life policy held for jury.**

Evidence in an action on a life insurance policy, in which the defense was suicide, *held* to present a question for the jury, and instructions submitting that issue approved.

In Error to the District Court of the United States for the Middle District of Pennsylvania; Albert W. Johnson, Judge.

Action at law by Georgia O. Graves and Lura Vaughn against the Mutual Life Insurance Company of New York. Judgment for plaintiffs, and defendant brings error. Affirmed.

Arthur G. Dickson, of Philadelphia, Pa., and Frank E. Donnelly, of Scranton, Pa.

(Dickson, Beitler & McCouch, of Philadelphia, Pa., of counsel), for plaintiff in error.

Chester H. Ashton, of Knoxville, Pa., and T. A. Crichton, of Wellsboro, Pa. (Crichton & Owlett, of Wellsboro, Pa., of counsel), for defendants in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This was an action in assumpsit to recover double indemnity for death by accident under the provisions of a life insurance policy on the life of Thomas W. Graves. The policy was for $10,000. It provided, however, that if death resulted directly from bodily injury, "independently and exclusively of all other causes, and that such bodily injury was effected solely through external violent and accidental means," the company would pay, instead of the face amount of the policy of $10,000, double indemnity, or $20,000. Double indemnity, however, was not payable if the death of the insured resulted from his own act.

The defendant company contends that the insured committed suicide, and so the beneficiary is not entitled to double indemnity. The plaintiffs, on the other hand, say that the death of the insured was purely accidental. The case was tried to the court and jury on this issue. The jury rendered a verdict for the plaintiffs, and the defendant brought the case here on writ of error.

The main issue here is whether or not the defendant was entitled to binding instructions. It insists that, while there is a presumption against suicide, the physical facts surrounding the death completely rebut this presumption, and there was nothing to submit to the jury.

[1] In order to overcome the presumption against suicide, the evidence must show that the death was self-inflicted, New York Life Ins. Co. v. Weaver (C. C. A.) 8 F.(2d) 680; or facts inconsistent with any reasonable hypothesis of death by accident, Ætna Life Insurance Co. v. Tooley (C. C. A.) 16 F.(2d) 243; or the existence of such circumstances and conditions as to leave room for no other reasonable hypothesis than that of suicide, Wilkinson v. National Life Association of Des Moines, 203 Iowa, 960, 211 N. W. 238.

[2, 3] Did the evidence show these necessary facts so clearly as to leave no question for the jury? In other words, was there any evidence from which the jury could reasonably draw the inference that the death was accidental rather than suicidal? Where the facts in any particular case are disputable,

or are of such character that different minds might reasonably draw different conclusions therefrom, it presents a question for the determination of the jury. Teis v. Smuggler Mining Co. (C. C. A.) 158 F. 260, 269, 15 L. R. A. (N. S.) 893; Gudfelder v. Pittsburgh, C., C. & St. L. Ry. Co., 207 Pa. 629, 57 A. 70. Where there is doubt, it should be resolved in favor of the submission of the case to the jury, and this is true, whether the uncertainty arises from a conflict in the testimony or, the facts being undisputed, fair-minded men might honestly draw different conclusions from them. 38 Cyc. 1567; Nyback v. Champagne Lumber Co. (C. C. A.) 90 F. 774; Mexican Central Ry. Co. v. Murray (C. C. A.) 102 F. 264, 271; Railroad Company v. Stout, 84 U. S. (17 Wall.) 657, 664, 21 L. Ed. 745; Washington & Georgetown Railroad Co. v. McDade, 135 U. S. 554, 10 S. Ct. 1044, 34 L. Ed. 235; Richmond & Danville Railroad Co. v. Powers, 149 U. S. 43, 13 S. Ct. 748, 37 L. Ed. 642. Did the application of these rules of law require the direction of a verdict or submission of the case to the jury?

[4] On the morning of his death, January 8, 1924, Mr. Graves went to the home of Mr. William O'Connor and got a rifle, which he had loaned to him several weeks before for a hunting trip, together with some shells. He returned home and told Mrs. Graves that he was going to send the rifle to his brother-in-law in Tioga, which is about 20 miles from Wellsboro. He took the rifle to the basement, but could not find burlap in which it was to be wrapped preparatory to shipping. He came up and found the burlap in his automobile. He talked with Mrs. Graves, told her what he intended doing that morning, played with the baby, and went to the basement again, taking the burlap. The rifle was discharged shortly thereafter, and Graves was instantly killed. The bullet entered his chest and passed through him, slightly upward. One exploded shell was found in the gun and one cartridge.

No one was present when the rifle was discharged, and so the question of how the deceased came to his death depended entirely upon circumstantial evidence. The burlap in which the rifle was to be wrapped was cut or torn into strips wide enough to be used for the purpose of wrapping the gun, and these were found on the basement floor. This would seem to indicate a purpose to send the gun to his brother-in-law, and that he had gotten it with that intention, and not with the idea of taking his life.

There was further evidence that his foot was caught in the burlap, which might have caused him to fall, and the rifle to be accidentally discharged. He acted in a perfectly natural manner that morning, and there was nothing in what he said or did to indicate that he was contemplating suicide. There was evidence showing that a short time before, while on a hunting trip, the gun was discharged accidentally, without pressure on the trigger or any apparent cause therefor.

The defense seeks to show that the deceased committed suicide and that the motive for so doing was that his accounts as treasurer of the county of Tioga were short to the extent of $10,000 or more. This was relevant testimony for the jury to consider. The deceased had been going over his accounts on the previous day, preparatory to turning over his office to his successor; but the plaintiffs say "there was no evidence showing that the deceased knew his bank balance did not equal the amounts due from him, and there was evidence adduced by the plaintiff below that his deposits were made both by himself and his clerk," and that the auditor's report, which would officially show the amount due from him to the county, would not be made and filed for nearly a month thereafter. This shortage, therefore, might or might not have actuated him. If he did not know of the shortage, then the alleged motive and the argument based thereon fall.

We think that reasonable and fair-minded men might honestly differ as to the conclusion to be drawn from these facts, and that all of the evidence dealing with the circumstances surrounding his death was for the consideration of the jury, whose function it was to determine as a fact whether the death was accidental or suicidal. Standard Life & Accident Ins. Co. v. Thornton (C. C. A.) 100 F. 582, 49 L. R. A. 116; Fidelity & Casualty Co. v. Love (C. C. A.) 111 F. 773; Pythias Knights' Supreme Lodge v. Beck, 181 U. S. 49, 21 S. Ct. 532, 45 L. Ed. 741; National Union v. Fitzpatrick (C. C. A.) 133 F. 694.

The defendant contends that the learned trial judge erred in the admission of testimony and in his instructions to the jury. Capt. William A. Jones, formerly of the New York police force, testified that the gun in question could not be discharged in any other manner than by pressure upon the trigger. In rebuttal, Cecil Roberts, who had been on a hunting trip with the deceased shortly before his death, testified over objection that, when they were shooting at a mark, the rifle was accidentally discharged, without pressure on the trigger.

The defendant requested the judge to charge that "there is no evidence in this case going to prove that the rifle causing the death of Graves could be discharged in any way except one; that is, by pressure on the trigger." After affirming the point, he added: "We have the testimony here that at one time, when they were shooting at a mark, the gun went off and was discharged in some way or other, not at the mark. You will take that into consideration, along with all of the testimony in regard to the discharge of the gun." We think that the judge did not commit error in admitting this testimony, or in thus commenting on it.

The judge was asked by plaintiffs to charge the following point: "When circumstantial evidence is relied upon to establish death by suicide, the party making the averment must prove it by facts which exclude every reasonable hypothesis of natural or accidental death." He affirmed that point, with the following qualification: "We affirm that, and qualify it by stating that here, where the defense sets up suicide—if the defense establishes suicide—proves suicide by the fair weight or preponderance of the evidence, then they have established a defense, and there can be no recovery in this case."

The defendant says with reference to this qualification that "the error consisted in leaving with the defendant below the burden of proof of suicide, rather than with the plaintiffs below the burden of proof of accident." He had already charged that the burden of establishing that the death of the deceased by external, violent, or accidental means was upon the plaintiffs. This modification in no way relieved them of that burden.

The defendant requested the trial judge to charge that: "While there is a presumption of law that a man does not take his own life, this is but a presumption, and has less weight where he is facing exposure and disgrace." He affirmed that point as follows: "I affirm that point, but with this qualification—that the presumption remains all the time, and thus must be overcome by evidence, and it is for you to determine whether there was any act committed on the part of the deceased which would cause disgrace, and which so preyed upon his mind as to cause him to commit suicide."

The defendant says, because the shortage in cash of the deceased was conclusively proved, the court erred in suggesting that there was any question for the jury as to whether he had committed any act which would cause him disgrace, and in leaving to the jury to determine the exact effect of such impending disgrace upon his mind.

The defendant asked the court to charge: "The undisputed evidence shows that Graves at the time of his death had embezzled from the county of Tioga $10,233.39 and from the state of Pennsylvania $731.92. This evidence should be given careful consideration by the jury in the determination of the question of whether Graves had a motive for taking his own life."

In reply the judge charged: "We refuse that point as put. It asks us to tell you, as a matter of law, or as a necessary and legal conclusion, that he did embezzle the money. The plaintiffs admit that there was a shortage of the amount, but they do not admit that there was any embezzlement—any criminal action—and it will be for you to determine as a question of fact whether there was any criminal act, or any embezzlement, and what effect such act, if there was such act, had upon his mind, and whether it caused him to commit suicide. Of course, we have allowed that testimony as bearing upon the question of a motive, and how Graves came to his death.

This charge substantially stated the facts, but did not use the terminology of the request. This was all that the defendant could ask. Railway Company v. McCarthy, 96 U. S. 258, 265, 24 L. Ed. 693. The defendant, in these last two requests, apparently assumed that the establishment of the shortage was proof of embezzlement. This might or might not be the case. The issue of what possible explanation there might be of the shortage was not before the District Court, and is not before us, and we think the judge properly refused to charge in the language requested.

The defendant urges that the judge erred in refusing to grant a new trial on the ground of after-discovered evidence to the effect that Mr. Clark Rexford stated that he had seen a Mr. Apgar pump shells out of the rifle in question when returning from a hunting trip with Mr. O'Connor. He testified, however, that he did not know whether or not Apgar pumped out all the shells, and he did not know whether or not the gun had been used between that time and the day of the death of Mr. Graves.

The granting of a new trial is a matter of discretion. A judgment will not be reversed on the ground of a refusal to grant a new trial, unless it is established that the trial judge abused his discretion. Before we can convict the trial judge in this case of such abuse, we must assume: (1) That all the

shells were pumped out of the gun by Apgar; (2) that the gun remained unloaded in the house of Mr. O'Connor from that time until it was taken by Mr. Graves, or that it was unloaded on the day when he took it from the home of Mr. O'Connor; (3) that the deceased loaded it for the purpose of committing suicide; (4) that this after-discovered evidence could not have been discovered by the defendant with reasonable diligence at or before the trial. The evidence does not establish such facts as will justify us in making these assumptions.

We do not find that the court erred, and the judgment is affirmed.