**MODERN WOODMEN OF AMERICA v. WATKINS.**

**WOODMEN OF THE WORLD LIFE INS. SOC. v. SAME.**

**No. 10350.**

Circuit Court of Appeals, Fifth Circuit.

Dec. 23, 1942.

---

[2] Britain at War, J. B. Priestley, Harper & Bro.

Walker Liddon, of Fort Pierce, Fla., Geo. G. Perrin and George H. McDonald, both of Rock Island, Ill., and Rainey T. Wells, of Omaha, Neb., for appellants.

R. K. Lewis, of West Palm Beach, Fla., and Dewey Crawford, of Fort Pierce, Fla., for Gertrude Watkins.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

Gertrude Watkins, as beneficiary, brought actions against Modern Woodmen of America, and Woodmen of the World Life Insurance Society, to recover on two $5,000 policies of life insurance issued by these companies to her husband, Tom E. Watkins. On motion of the defendants the actions were consolidated for trial. The consolidated cases were then tried to a jury which found the issues in favor of the plaintiff. Judgments were entered on the verdicts, and the insurance companies have appealed.

The insurance companies defended the actions on the ground that Watkins committed suicide by taking potassium cyanide, a deadly poison. At the close of all the testimony, they moved for directed verdicts on the ground that suicide, a complete defense, had been conclusively established by the evidence. Overruling of the motion is assigned as error.

In the early morning hours of December 15, 1940, Tom E. Watkins was found in an unconscious condition, lying on his back in front of his parked automobile on the public highway ten miles west of Boynton, Florida. Within a short time thereafter he died. He had been drinking intoxicating liquors the day and night before his death; and Robert Sutton, who talked with him about forty-five minutes before he was found in the highway, testified that Watkins came to his nearby beer place early in the morning and inquired of his whereabouts, explaining "I have been drunk all night". The windows of his automobile were closed, and a can of potassium cyanide was found in the car in a paper sack. The lid was on the can, but a portion of the poison was missing. A post mortem examination of certain organs of the body revealed the presence of a small quantity of hydrocyanic acid, or cyanide, in the brain, which tended to show poisoning with potassium cyanide. There was evidence that Watkins used potassium cyanide about his farm and restaurant for the purpose of killing rats; that he was familiar with its poisonous qualities; that death might result from taking small amounts of the substance internally, from inhaling gasses from it, or from quantities working its way under the finger nails and into the tissues and blood stream of the body. It was further shown that Watkins had been drinking to excess for some time prior to his death, and that he was having financial troubles. His death was shrouded in mystery, and no one could state with certainty the circumstances of his passing. The evidence is wholly circumstantial.

█ █ It has long been established in cases of this kind that an insurer seeking to escape liability on the ground of suicide has the burden of proving that the death of the insured was self-administered with suicidal intent. New York Life Ins. Co. v. Miller, 65 App.D.C. 129, 81 F.2d 263; Home Benefit Ass'n v. Sargent, 142 U.S. 691, 12 S.Ct. 332, 35 L.Ed. 1160. The evidence in the case at bar does not conclusively establish suicide, but permits conflicting inferences, and fair-minded men might reasonably differ as to the manner and cause

354

of the insured's death. On this record it cannot be said that the evidence established facts which exclude every reasonable hypothesis of death except by suicide. The evidence made an issue for the jury, and the court properly refused to direct verdicts for the defendants. Mutual Life Ins. Co. v. Graves, 3 Cir., 25 F.2d 705; Tabor v. Mutual Life Ins. Co., 4 Cir., 13 F.2d 765; Metropolitan Life Ins. Co. v. Williamson, 5 Cir., 174 F. 116; Equitable Life Assur. Soc. v. First Nat. Bank, 5 Cir., 40 F.2d 817.

█ It is shown that Errol S. Willes was a lawyer practicing at Fort Pierce, Florida, where Watkins lived; that he was also agent and manager for a small-loan company; that on the day preceding his death, Watkins went to the office of Willes and sought to borrow money and get a drink of whiskey; that Willes loaned Watkins $50.00 and took a drink with him, and they proceeded to discuss "some other things regarding shortages in his business and also domestic troubles". A question of privileged communication arose, the jury was retired, and the questioning of Willes continued out of their presence. Willes stated that he considered it his ethical duty to claim privilege, but that he would testify in accordance with the ruling of the court in the matter. He stated:

"That part where he stated he wanted to borrow some money, I don't think it was privilege; but regarding the other, I do think it was privilege.

"Q. Let me ask you this: did he express any or make any statement to you that he intended either to 'go west' or they'd find him in the river before anything happened? A. That statement was made, yes.

"Q. Did he seek your advice at that time or retain you to tell or advise him whether or not he should commit suicide? A. No he didn't retain me for that; I never thought he would; I thought he was just talking. * * * I don't think he was seeking advice as to whether he should commit suicide when he made that statement. It was all within the realm of that he needed money and that he didn't know where all the money was going from the bus station and just such as that. It was all in the general conversation."

The court refused to permit the lawyer to testify in regard to the statements, holding that at the time the statements were made the relationship of attorney and client existed, and that, therefore, the matter was privileged and inadmissible.

█ The court erred in refusing to permit evidence of the statement that Watkins intended to "go west" or that "they'd find him in the river". Under the facts shown this statement was in no sense part of a privileged communication between attorney and client. The rule which places the seal of secrecy upon communications between a client and his attorney is founded upon the necessity, in the interest and administration of justice, that persons seeking legal aid and counsel should be free to communicate with their confidential adviser about the subject matter of their problem without fear of consequences or the apprehension of disclosure. Hunt v. Blackburn, 128 U.S. 464, 9 S.Ct. 125, 32 L. Ed. 488. The courts should sustain the privilege when it appears that the communication with the attorney was of a confidential character and made to him in connection with the business in which he has been retained. 28 R.C.L. 558. The privilege, however, does not extend to every statement made to a lawyer. If the statement is about matters unconnected with the business at hand, or in a general conversation, or to the lawyer merely as a personal friend, the matter is not privileged. The fact that a person is a lawyer does not disqualify him as a witness, for he, like any other person, may testify to any competent facts except those which came to his knowledge by means of confidential relations with his client. Buckmaster v. Kelley, 15 Fla. 180; Herrin et al. v. Abbe, 55 Fla. 769, 46 So. 183, 18 L.R.A., N.S., 907; 28 R.C.L. 416; 70 C.J., Witnesses, § 557, p. 416; Encyclopedia of Evidence, Privileged Communications, Vol. 10, pp. 219, 220.

██ Aside from the question of whether or not statements as to intended suicide, or proposed unlawful conduct, are ever privileged, it clearly appears from the statements made by Willes out of the presence of the jury that the remarks of Watkins bearing upon the contested issue of suicidal intent were made in a "general conversation", and not in the confidential relation of attorney and client. Determination of the issue of suicide was wholly dependent upon circumstantial evidence, and the statements made by Watkins on the day before his death were relevant to this issue. The defendants were entitled to have the jury hear and consider these

statements along with the other evidence touching the issue of suicide, and their exclusion constituted error requiring retrial of the actions.

The judgments are reversed and the causes are remanded for a new trial.

Reversed and remanded.