952 So.2d 618 (2007)
STATE of Florida, Petitioner,
v.
Michael BRANHAM, Respondent.
No. 2D06-3676.
District Court of Appeal of Florida, Second District.
March 30, 2007.
*619 Bill McCollum, Attorney General, Tallahassee, and Danilo Cruz-Carino, Assistant Attorney General, Tampa, for Petitioner.
Lawrence D. Shearer of McDonald & Shearer, P.A., Lakeland, for Respondent.
CANADY, Judge.
The State seeks certiorari review of the trial court's order determining that certain testimony is subject to the lawyer-client privilege. Because we conclude that the trial court's ruling was erroneous and that the requirements for certiorari relief have been met, we grant the State's petition.

I. Background

This certiorari proceeding arises from the prosecution of Michael Branham (the defendant) for the murder of his wife, Janette L. Branham (the victim). In the criminal proceeding, the defendant filed a "Notice of Exercise of Attorney-Client Privilege" with respect to certain communications between W. James Kelly, a practicing lawyer, and the defendant.
Prior to the defendant's indictment, Kelly was subpoenaed by the State to give a sworn statement. After raising the issue of lawyer-client privilege, Kelly was instructed by a circuit judge to answer the State's questions. Kelly then gave a sworn statement in which he testified that during the week preceding the victim's death, the defendant told Kelly that he intended to kill the victim. After the defendant's indictment, Kelly was listed by the State as a "person having information" with respect to the case.
In response to the defendant's notice concerning Kelly, the State filed a motion seeking a determination that the communications between the defendant and Kelly were not subject to the protection of the lawyer-client privilege. After considering the circumstances surrounding the communication by the defendant to Kelly, the trial court entered an order determining that "the Defendant's Exercise of Lawyer-Client Privilege is allowed." The State now seeks to have this order of the trial court quashed.
At the hearing on the State's motion, Kelly testified that several months before the death of the victim, the Branhams began having marital problems and discussed filing for divorce. Because Kelly was a friend to both of the Branhams, Kelly made it clear to them that he would not represent either of them in the divorce proceedings. However, Kelly agreed to act as a "go-between" for the Branhams in their efforts to resolve their differences.
Sometime during the week prior to the victim's death, Kelly went to the defendant's house on a social visit. Kelly testified that he and the defendant were discussing the Branhams' marital problems and that "some of [the discussion] was just shooting the breeze, some of it was just talk." During the conversation, the defendant inquired if Kelly was his attorney and *620 Kelly responded "Sure." Immediately thereafter, the defendant stated that he was going to kill his wife. According to Kelly, the defendant's threat occurred "right in the middle of the conversation." The defendant subsequently repeated the threat several more times during their conversation. Kelly's response to the defendant each time he made the threat was "You're crazy. I don't even want to hear it" and "Don't talk like that." When Kelly was asked whether he gave the defendant advice or counsel, Kelly testified:
I don't think he was asking me. I don't know what his intentions were. I just know what I replied to him was certainly not in the context of a criminal lawyer. As far as I know, the issue of what he was telling me, I didn't think that had anything to do with anything going on. I mean, it just came whistling out of the clear blue.
Kelly also testified that the defendant never requested Kelly's assistance to plan, commit, or get away with a crime.
When asked if he was "talking to [the defendant] as his attorney with regard[] to the divorce," Kelly said "No." When asked if he was "talking to [the defendant] strictly as a friend," Kelly said "Yes." Kelly further testified that he warned the victim concerning the threats made by the defendant. There was no testimony before the trial court indicating that in the conversation between the defendant and Kelly, the defendant either sought or received any legal advice concerning any matter.
The trial court's ruling that the lawyer-client privilege was applicable was based on the crucial determination that when Kelly "responded to [the defendant] indicating that he was his lawyer, he became such and [the defendant] had a right to rely on that affirmation." In its certiorari petition, the State arguesas it did before the trial courtthat the defendant neither sought nor received legal advice and that the lawyer-client privilege was therefore inapplicable.

II. Certiorari Jurisdiction

We have common law certiorari jurisdiction here because the trial court's decision at issue would "`substantially impair[] the ability of the [S]tate to prosecute its case'" and thereby cause irreparable prejudice to the State. State v. Pettis, 520 So.2d 250, 253 (Fla. 1988) (quoting State v. Steinbrecher, 409 So.2d 510, 511 (Fla. 3d DCA 1982)). "[C]ertiorari review is appropriate" with respect to a "pretrial order excluding one of [the State's] witnesses from testifying at trial . . . because the [S]tate has no right to a direct appeal in the event the defendant is acquitted." State v. Gerry, 855 So.2d 157, 159 (Fla. 5th DCA 2003). Certiorari relief will be granted only in "those situations where `there has been a violation of a clearly established principle of law resulting in a miscarriage of justice.'" Pettis, 520 So.2d at 254 (quoting Combs v. State, 436 So.2d 93, 96 (Fla. 1983)).

III. The Basis for the Lawyer-Client Privilege

Section 90.502(2), Florida Statutes (2005), provides that "[a] client has a privilege . . . to prevent any other person from disclosing . . . the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client." (Emphasis added.) Under section 90.502(1)(b), client is defined as "any person . . . who consults a lawyer with the purpose of obtaining legal services or who is rendered legal services by a lawyer." (Emphasis added.)
The statute makes clear that the lawyer-client privilege only applies to communications if they "were made in the rendition of *621 legal services to the client." § 90.502(2). A person cannot be considered a client and therefore cannot obtain the protection of the lawyer-client privilege unless the person either "consult[ed] a lawyer with the purpose of obtaining legal services" or was "rendered legal services by a lawyer." § 90.502(1)(b).
"The purpose of the [lawyer-client] privilege is to encourage clients to make full disclosure to their attorneys." Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). The privilege "protects only those disclosures necessary to obtain informed legal advice." Id. "[I]f a communication with a lawyer is not made with him in his professional capacity as a lawyer, no privilege attaches." Skorman v. Hovnanian of Fla., Inc., 382 So.2d 1376, 1378 (Fla. 4th DCA 1980). Thus, the lawyer-client privilege "does not extend to every statement made to a lawyer." Modern Woodmen of Am. v. Watkins, 132 F.2d 352, 354 (5th Cir. 1942). A statement made "to [a] lawyer merely as a personal friend" is not subject to the privilege. Id.

IV. The Defendant Neither Sought Nor Received Legal Services

Here, the evidence before the trial court unequivocally established that in the conversation with Kelly at the defendant's home, the defendant never asked for any legal advice and Kelly never gave any legal advice. The defendant did not "consult" Kelly "with the purpose of obtaining legal services," and Kelly did not "render[ ] legal services" to the defendant. § 90.502(1)(b). The defendant's statements to Kelly that the defendant intended to kill his wife were not "made in [connection with] the rendition of legal services to" the defendant. § 90.502(2). In ruling that the statements made by the defendant to Kelly were subject to the lawyer-client privilege, the trial court failed to apply the clearand clearly applicableprovisions of sections 90.502(1)(b) and 90.502(2).
There is no legal basis for the trial court's conclusion that because Kelly told the defendant that Kelly was the defendant's attorney, the defendant was entitled to rely on the lawyer-client privilege. The lawyer-client privilege is not established by incantation. Nor does the privilege come into existence simply because a party believes that it exists.
Kelly was the defendant's attorney in a then-pending negligence case, and Kelly had previously represented the defendant in other civil matters. But the existence of the lawyer-client relationship between Kelly and the defendant with respect to the negligence case and the other matters did not establish a lawyer-client relationship with respect to the matters discussed in the course of the conversation at issue here. That conversation was totally unrelated to any lawyer-client relationship between Kelly and the defendant. See United States v. Evans, 113 F.3d 1457, 1463 (7th Cir. 1997) ("Regardless of [the attorney's] prior lawyer-client relationship with [the defendant], [the defendant] simply failed to meet his burden of establishing that his present involvement with [the attorney] was with [him] in his capacity as a legal advisor.").

V. Conclusion

The State's petition is granted, the writ is issued, and the order on review is quashed.
Petition granted.
CASANUEVA, J., Concurs.
SILBERMAN, J., Concurs specially with opinion.
*622 SILBERMAN, Judge, Specially concurring.
I concur in the majority opinion. I also note that section 90.502(4), Florida Statutes (2005), states as follows: "There is no lawyer-client privilege under this section when: (a) The services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew was a crime or fraud." Thus, if Branham had consulted with Kelly to enable or to aid Branham in killing his wife, no privilege would apply.
The only evidence before the trial court in relation to the privilege issue was Kelly's sworn statement and his hearing testimony. Branham did not testify or present other evidence that he was seeking legal advice from Kelly when he volunteered that he was going to kill his wife. Based on the evidence and the circumstances presented, I agree that the trial court erred in determining that the lawyer-client privilege applied.