## THE MADRID.[1]

### MENGE *et al. v.* THE MADRID.

### AHERN *v.* SAME.

**(*Circuit Court, E. D. Louisiana.* December 28, 1889.)**

1. **STARE DECISIS.**
    " *Stare decisis*" means that when a point has been once settled by judicial decision it forms a precedent for the guidance of courts in similar cases; but precedents may be departed from when necessary to vindicate plain and obvious principles of law, or to remedy a continued injustice.
2. **SAME—FEDERAL COURTS.**
    The decisions of the circuit courts, not being uniform as to the relative priority of statutory and strict maritime liens, have not become a rule of property, within the doctrine of *stare decisis.*
3. **MARITIME LIENS—STATE STATUTE—ADMIRALTY JURISDICTION.**
    Contracts for supplies to a vessel at her home port are maritime in their nature, and liens therefor created by state statutes are within the admiralty jurisdiction, and enforceable by proceedings *in rem* only in the federal courts.
4. **SAME—BASIS OF LIEN.**
    In admiralty the rule is that the greater advancement of the safety and preservation of the vessel forms the basis of priority of lien, thus often reversing the common-law principle of priority according to time.
5. **SAME—MORTGAGE FOR PURCHASE MONEY.**
    A mortgage to secure the purchase money of a vessel is not a maritime debt, and does not import a maritime lien.
6. **SAME—EFFECT OF RECORDING.**
    Rev. St. § 4192, is simply a registry statute, and does not give a maritime lien to a mortgage.
7. **SAME—STATE STATUTES—PRIORITIES.**
    Supplies to a vessel by a material-man in her home port, under a state statute, have the same rank and lien as supplies furnished in a foreign port. *The Guiding Star,* 18 Fed. Rep. 263, followed.

---

[1] Reported by Peter J. Hamilton, Esq., of the Mobile bar.

8. SAME.
   Supplies furnished a vessel in her home port under a state statute are to be paid in priority to a duly-recorded mortgage. *The John T. Moore*, 3 Woods, 61, and *Baldwin* v. *The Bradish Johnson*, Id. 582, overruled.

In Admiralty. On appeal from district court.

*O. B. Sansome*, *F. M. Butler*, and *Rice & Armstrong*, for appellant.

*R. H. Browne*, for appellee.

Before LAMAR, Justice, and PARDEE, J.

LAMAR, Justice. There is no controversy but that the claims of the material-men, intervenors in this case, are valid, and that, under the local law of Louisiana, they are entitled to a lien upon the steam-ship Madrid for the amount of those claims, which is enforceable by process *in rem*. The contracts under which the materials, repairs, and other necessaries were furnished are maritime, within the rule laid down by the supreme court of the United States in *Insurance Co.* v. *Dunham*, 11 Wall. 1, and are therefore under the jurisdiction of the admiralty.

The question in this case, upon the foregoing facts, is, does this lien given by the local law stand on an equal footing with the lien given by the general maritime law to material-men who furnish supplies and other necessaries to a ship in other than her home port, and therefore take precedence over the claim of the mortgagees? The general question here involved has never been directly before the supreme court of the United States for consideration. It has arisen, however, in nearly all of the circuits, and the decisions upon it have not been uniform. In this circuit the rule, as announced by the late Mr. Justice WOODS in *The John T. Moore*, and *Baldwin* v. *The Bradish Johnson*, 3 Woods, 61, 582, respectively, has been, that a mortgage on a vessel, duly recorded according to section 4192, Rev. St., is inferior to all strictly maritime liens, but is superior to any subsequent lien given by the state law for supplies furnished in the home port. Other cases holding the same doctrine are: *The De Smet*, 10 Fed. Rep. 483, in this circuit; and *The Grace Greenwood*, 2 Biss. 131, and *The Kate Hinchman*, 7 Biss. 239, in the seventh circuit. A leading case holding the reverse of this rule, namely, that liens given to material-men by the state statutes, for supplies furnished a vessel in her home port, are of equal rank with strictly maritime liens, and therefore take precedence over mortgages of the vessel, is *The Guiding Star*, decided by the late Mr. Justice MATTHEWS in the circuit court of the United States for the southern district of Ohio. 18 Fed. Rep. 263. To the same effect, see *The J. W. Tucker*, 20 Fed. Rep. 129; *The Arctic*, 22 Fed. Rep. 126; *The Amos D. Carver*, 35 Fed. Rep. 665, in the second circuit; *The Venture*, 26 Fed. Rep. 285, in the third circuit; *The Wyoming*, 35 Fed. Rep. 548, and *The Menominie*, 36 Fed. Rep. 197, in the eighth circuit; *Clyde* v. *Transportation Co.*, Id. 501, in the fourth circuit; *The General Burnside*, 3 Fed. Rep. 228, and *The Rapid Transit*, 11 Fed. Rep. 322, in the sixth circuit.

Counsel for the mortgagees rely mainly upon the doctrine of *stare decisis* to support the claim of their clients. Their contention is, that the

rule of law heretofore announced in this circuit should stand, because, as they assert, rights of property have been acquired under it, and vested rights will be disturbed by any change. On the other hand, it is strenuously insisted by counsel for the material-men that the decisions of this circuit upon the general question under consideration are erroneous, and should not be followed. It is claimed that the lien given by the state statutes for supplies, etc., furnished a domestic vessel stands on an equality with those liens arising under the general maritime law for supplies, etc., furnished a foreign vessel. The rule of *stare decisis* means, in general, that when a point has been once settled by judicial decision it forms a precedent for the guidance of courts in similar cases. It expresses "the principle upon which rests the authority of judicial decisions as precedents in subsequent litigations." Abb. Law Dict. 497; *Gee's Adm'r* v. *Williamson*, 27 Amer. Dec. 631, note. This rule should, in the main, be strictly adhered to. An adherence to it is necessary to preserve the certainty, the stability and the symmetry of our jurisprudence. Nevertheless, there are occasions when a departure from it is rendered necessary in order to vindicate plain and obvious principles of law, and to remedy a continued injustice. These are the two grounds of justification in departing from a decision which has become a precedent. Wells, Res Adj. § 598. The decisions of the circuit courts of the United States not being uniform upon the general question at issue in this case, it can hardly be said that any of them has become a rule of property, within the principle of the doctrine of *stare decisis*. The learned justice who preceded me upon this circuit, were he alive and holding court here, could certainly exercise the right to change his mind upon the question, and make his opinion accord with that of some of the other courts of equal authority, which, in the light of later discussions, have adopted a different view. Nothing short of a conviction which would induce him to do so could constrain me to depart from a ruling made by a predecessor whose high character as a jurist receives from me a deference fully equal in force to that which the principle of *stare decisis* exacts. I act the more readily upon the conclusion reached by me, after a careful examination of the adjudged cases, because of the vital importance of uniformity in the administration of admiralty law by the courts of the United States, which uniformity can itself be permanently assured only by settling the rule on correct principles of law.

Under the general maritime law, necessary supplies furnished a vessel in other than her home port constitute a maritime lien, the presumption being that such supplies are furnished upon the credit of the vessel itself. No lien, however, is given by the general maritime law to material-men for supplies furnished a vessel in her home port, because, in that case, according to the generally accepted theory, the presumption is, that credit is given to the owner or master, and not to the ship itself. This rule of the admiralty law induced many of the states bordering upon the sea or the navigable inland waters to pass statutes giving to material-men a lien upon a vessel for necessary supplies furnished in her home port. All contracts of this kind, being maritime in their nature, are within the

jurisdiction of the admiralty, and therefore, under the constitution of the United States, these statutory liens can be enforced by proceedings *in rem* only in the federal courts.

In pursuance of the acts of congress which authorized it to adopt rules of practice in the courts of the United States in causes of admiralty and maritime jurisdiction, the supreme court of the United States, in 1844, adopted the following rule of practice:

Rule 12. "In all suits by material-men for supplies, repairs, or other necessaries for a foreign ship, or for a ship in a foreign port, the libellant may proceed against the ship and freight *in rem*, or against the master or the owner alone *in personam*. And the like proceeding *in rem* shall apply to cases of domestic ships, where, by the local law, a lien is given to material-men for supplies, repairs, or other necessaries."

The various state laws giving liens, the constructions put on them by the state courts, and the proceedings *in rem* authorized by this rule, were found, after experience, to be productive of much confusion under our mixed form of government; and the federal courts were somewhat embarrassed at times in enforcing those liens in accordance with the principles and rules of the Maritime Code. *The St. Lawrence*, 1 Black, 522. Accordingly, this twelfth rule was changed, in 1859, so as to read as follows:

Rule 12. "In all suits by material-men for supplies or repairs, or other necessaries, for a foreign ship, or for a ship in a foreign port, the libellant may proceed against the ship and freight *in rem*, or against the master or owner alone *in personam*. And the like proceeding *in personam*, but not *in rem*, shall apply to cases of domestic ships, for supplies, repairs, or other necessaries."

This new rule, however, was found to work injustice in a great many cases; for the material-man who furnished necessary supplies to a vessel in her home port, although given a lien on such vessel, under the statute, as a security for such supplies, was without remedy to enforce his lien. He could not enforce it *in rem* in the state courts; for, his contract being maritime, such courts, though having jurisdiction, were restricted to common-law remedies. He could not enforce it in the federal courts, for, although those courts had exclusive jurisdiction of all cases of admiralty and maritime contracts, they were not allowed, under this new rule, to proceed *in rem* against the vessel. Accordingly, in 1872, a third twelfth rule was adopted by the supreme court, which reads as follows:

"In all suits by material-men for supplies or repairs, or other necessaries, the libellant may proceed against the ship and freight *in rem*, or against the master or owner alone *in personam*."

In *The Lottawanna*, 21 Wall. 558, it was held that the effect of this last amendment of rule 12 was simply to restore it as it existed from 1844 to 1859, or, rather, to render it "general in its terms, giving to material-men in all cases their option to proceed either *in rem* or *in personam*. Of course, this modification of the rule cannot avail where no lien exists; but where one does exist, no matter by what law, it removes all obstacles to a proceeding *in rem*, if credit is given to the vessel." And in another part of the opinion it is said:

"As to the recent change in the admiralty rule referred to, it is sufficient to say, that it was simply intended to remove all obstructions and embarrassments in the way of instituting proceedings *in rem* in all cases where liens exist by law, and not to create any new lien, which, of course, this court could not do in any event, since a lien is a right of property, and not a mere matter of procedure."

There would seem to be no reason, on principle, why the lien created by the local statute should not rank with the lien given by the general maritime law. They each have as a basis the furnishing of necessary supplies to the ship, upon the credit of the ship itself. In each instance the contract is maritime. The proceedings by which the lien, in each instance, is enforced are identical. And the same reason which makes the lien given by the general maritime law take precedence over ordinary mortgage debts, and other claims not maritime, is applicable in the case of liens given by the local law. The rule as to priority is not the same in courts of admiralty as in courts of common law and equity. In the latter courts the rule of priority of liens is expressed by the maxim, *qui prior est tempore, potior est jure*. But in admiralty the reverse of this rule is more often true than otherwise. There the rule is, that those things which in the highest degree contribute to the safety and preservation of the vessel—*the thing which is the subject of all the liens*—form the basis of the lien entitled to priority. It would seem, therefore, that this lien given by the local statute, based, as it is, upon the same sort of necessaries as constitute a lien under the maritime law, (the contract for furnishing these supplies being maritime, and capable of enforcement by proceedings *in rem* only in the admiralty courts of the United States, under the same rules and proceedings as the general maritime lien,) is itself in the nature of a maritime lien—at least, in a much greater degree than an ordinary vendor's mortgage debt; for a mortgage of this kind is not a maritime lien. *The Lottawanna, supra; Bogart* v. *The John Jay*, 17 How. 399. It is not a maritime contract; and the mortgagee cannot bring a libel in admiralty on the mortgage, and subject the vessel to the payment of his claim by process *in rem*. If he gets into admiralty at all, he must do so under the forty-third admiralty rule. See authorities last cited. The reason of the admiralty law, as regards priority of maritime liens, would seem, therefore, to be conclusive in favor of giving the material-men in this case priority over the mortgagees, as regards their respective claims; for the repairs, materials, and other necessary supplies furnished the vessel in the port at New Orleans all contributed to the safety, the usefulness, and the preservation of the vessel itself, and served to protect it so that it might be made available, not only for the satisfaction of the claims thus arising, but for all other valid claims, including the mortgage debt. These supplies having been furnished for the security and protection of the vessel, were for the benefit of the mortgagees as well as of the original owner. The mortgagees should not be placed on a higher plane than the original owner of the vessel; and it goes without saying that, as to the latter, the claims of the material-men are valid and binding, and the liens, of which they form the basis, capable of enforcement in admiralty by process *in*

*rem.* Furthermore, section 4192 of the Revised Statutes is simply a registry statute. It does not give a maritime lien to the mortgagee; for the contract of mortgage, as we have shown, is not a maritime contract. As stated by Mr. Justice MATTHEWS in *The Guiding Star, supra,* with whose views on this matter I heartily concur:

"That provision (section 4192, Rev. St.) merely requires registration of mortgages or other conveyances of vessels as essential to their validity, except as against the grantors or other persons having actual notice thereof, and leaves all questions as to the priority of the incumbrances as they were before. The mortgage is but a conveyance of the title of the grantor, and can pass only what at the time he had, subject to every lien that had already become vested. More than this, the mortgagee is owner, and the vessel continues liable to become subject, while his title subsists, to whatever liens, by subsequent transactions, the law imposes, precisely as though there had been no change of title or ownership. The mortgagee, as creditor, has no higher rank than any other alienee."

Again, the rule preferring a foreign to a domestic material-man seems to me to discriminate unjustly against the latter. For instance, a material-man of Mobile, furnishing necessary supplies to a vessel whose home port is New Orleans, would be preferred to a material-man at New Orleans, furnishing the same class of supplies to the vessel. That is to say, this court, sitting at New Orleans, on the trial of such a conflict, would be bound to exclude its own citizens for the benefit of citizens of another state. It would seem that if, in reason, any distinction should be made by a court in a conflict between citizens of different states having claims of equal merit, in the abstract, the duty of the court ought to be to take care of, at least not to discriminate against, the citizens of the state in which the court is holden. But in this case all that is adjudged is, that they should be placed on an equality, as to their respective claims of the same nature.

The circuit judge concurs with Mr. Justice LAMAR in the foregoing opinion, referring, on the main question involved, to the views expressed in *The De Smet,* 10 Fed. Rep. 483.