## NEW YORK LIFE INS. CO. v. ROSS.

Circuit Court of Appeals, Sixth Circuit.
December 21, 1928.

No. 4989.

HICKENLOOPER, District Judge. This is an action upon a policy of life insurance containing provision for double indemnity in the event that the "death of the insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause." The insured met his death on the morning of July 7, 1925, when his automobile left the road and ran over the steep bank of a canal, adjacent the point where the Mifflin road crosses the canal by a steel bridge. Other pertinent facts are stated in the opinion of this court in International Life Ins. Co. v. Carroll et al. (C. C. A.) 17 F.(2d) 42, 50 A. L. R. 362.

The insurance company admitted liability for the face of the policy, but contested the accidental nature of the injury, alleging that the death of the insured was self-inflicted, or the result of suicide. The plaintiff introduced evidence tending to prove purely accidental cause of the injury, and evidence was introduced on behalf of defendant below, tending to prove motive for suicide. There were no eyewitnesses. The case went to the jury, and resulted in verdict and judgment for the amount of the double indemnity claimed.

■■ Claim of error is predicated upon the refusal of the court below to require production of a letter addressed by the insured to his wife and found with his will after his death. This letter was held inadmissible, under section 5596 of Shannon's Code of Tennessee, which provides that "neither husband nor wife shall testify as to any matter that occurred between them by virtue of or in consequence of the marital relation." This language is somewhat unique, but we cannot believe otherwise than that it was the intention of the Legislature, in the interest of a broad public policy, to make privileged all confidential communications between husband and wife, or such as were founded upon or were made in consequence of the marital relation. The incompetency thus arising continues after the marital relation has been terminated by death or otherwise (Patton v. Wilson, 2 Lea [70 Tenn.] 101, 112), and a document addressed by a husband to his wife, which relates to personal, family, and confidential matters between husband and wife, and which, as is here in evidence, has no relation whatever to the issues in suit, but is written in recognition of the uncertainty of life and to be delivered after death, would seem to fall within both the spirit and the letter of the statute.

■ The chief contention of error is that the

Ed T. Seay and A. W. Stockell, both of Nashville, Tenn. (Keeble, Seay, Stockell & Keeble, of Nashville, Tenn., on the brief), for plaintiff in error.

John A. Pitts, of Nashville, Tenn. (E. W. Ross, of Savannah, Tenn., and Pitts, McConnico & Hatcher, of Nashville, Tenn., on the brief), for defendant in error.

Before DENISON and MOORMAN, Circuit Judges, and HICKENLOOPER, District Judge.

court erred in charging the jury that, before the plaintiff could recover, she must show that the death resulted from accidental means, that is, that it was an accident, as distinguished from intentional and purposeful death; that where the facts and circumstances leave it doubtful or questionable whether death was caused by accident or suicide, and the probability that it was caused one way is about as much as the other, then the law presumes that the death happened as the result of an accident, and such presumption of law comes to the aid of the plaintiff in establishing his or her case by a preponderance of evidence; that where this presumption of accidental death is brought into play, and is given effect by the jury, the burden of proof shifts to the defendant, and it is made incumbent upon the defendant to establish by a preponderance of evidence that the deceased lost his life as a result of self-destruction; and that the presumption of accident stands as proof until it is overturned by evidence to the contrary.

This, we think, is a fair statement of the charge, so far as the question of error therein is now available to the plaintiff in error by reason of specific exceptions. "Exceptions to a charge must be specifically made in order to give the court opportunity then and there to correct errors and omissions, if any." Burns v. United States, 274 U. S. 328, 336, 47 S. Ct. 650, 653 (71 L. Ed. 1077). Construed as a whole, and taken in connection with the evidence in the case, the charge could have left no doubt in the minds of any of the jurors that the sole issue was whether death was accidental or suicidal. The only questions here are whether the court erred in charging that the burden of proof shifted to the defendant and the presumption remained throughout in aid of the plaintiff's case or until overcome by a preponderance of evidence.

As regards established principles of general application this charge is open to objection for want of accuracy. A presumption is not evidentiary in its nature, and the burden of proof, in its usual and primary meaning as the risk of nonpersuasion of the jury, never shifts, but remains with the affirmative throughout the case. A presumption is a rule of law, attaching to a given state of evidentiary facts certain procedural consequences as to the duty of the production of other evidence by the opponent. The "effect of a presumption of law (that is, the real presumption) is merely to invoke a rule of law compelling the jury to reach the conclusion in the absence of evidence to the contrary from the opponent." Wigmore on Evidence (2d Ed.) § 2491. The "fallacy" of the Supreme Court in considering a presumption as a matter of evidence, in the case of Coffin v. U. S., 156 U. S. 432, 459, 15 S. Ct. 394, 39 L. Ed. 481 et seq., is now generally rejected, even by the Supreme Court. See Wigmore on Evidence, §§ 2491 and 2511 (notes 4, 5 and 6); Agnew v. U. S., 165 U. S. 36, 17 S. Ct. 235, 41 L. Ed. 624; Holt v. U. S., 218 U. S. 245, 253, 31 S. Ct. 2, 54 L. Ed. 1021, 20 Ann. Cas. 1138.

The presumption is founded upon the then state of the proof. It is always procedural. Thus, where the circumstances in evidence clearly and irrestibly lead to the conclusion of suicide, no presumption that the death was accidental arises. The plaintiff's case can receive no support therefrom. Supreme Tent of Knights of Maccabees v. King, 142 F. 678 (C. C. A. 6); N. Y. Life Ins. Co. v. Bradshaw, 2 F.(2d) 457 (C. C. A. 5); N. Y. Life Ins. Co. v. Weaver, 8 F.(2d) 680 (C. C. A. 5); Von Crome v. Travelers' Ins. Co., 11 F.(2d) 350 (C. C. A. 8); Planters' Bank v. N. Y. Life Ins. Co., 11 F.(2d) 602 (C. C. A. 5). Compare Connally v. L. & N. R. R. Co., 4 F.(2d) 539 (C. C. A. 5); Scharlach v. Pac. Mut. Life Ins. Co., 16 F.(2d) 245 (C. C. A. 5); C., M. & St. P. Ry. Co. v. Coogan, 271 U. S. 472, 478, 46 S. Ct. 564, 70 L. Ed. 1041. But as the court here charged the jury, where the facts and circumstances (clearly meaning the physical facts and surrounding circumstances) leave in doubt the question whether the death was by accident or suicide, then a presumption that it was accidental, founded upon observations of human nature and life as a whole, does arise. The effect of this presumption is merely that the plaintiff must recover, in the absence of evidence to the contrary, from the opponent.

This presumption, as such, would not survive the introduction of evidence tending to prove suicide or even motive for suicide. Thereafter it would have no place in the reasoning as a presumption (Brunswick v. Standard Accident Ins. Co., 278 Mo. 154, 173, 213 S. W. 45, 7 A. L. R. 1213; Von Crome v. Travelers Ins. Co. (C. C. A.) 11 F.(2d) 350); but, as a legitimate inference from human life, the effect would continue. This inference is sometimes loosely denominated a presumption. In nature it is as truly evidentiary as the true presumption is procedural. In practical application of these rules, and for the proper understanding of the jury, it would seem merely a question of words—a method of phrasing the established rule—

whether the court charges the jury that the presumption continues after evidence to rebut it has been introduced, but is rebuttable, or whether the jury be charged that the presumption is destroyed but a natural and legitimate inference arises from the evidence, or lack of evidence, to be given such probative effect as the jury deems proper in determining the issue.

While every presumption in favor of plaintiff results in a shifting of the burden of proof in its secondary sense of the duty of producing evidence tending to rebut the presumption, or else suffer a verdict against defendant, it is clear that the charge of the court below had no reference to this secondary meaning of burden of proof. Under the charge, once the presumption has attached and been given effect by the jury, the burden was thrown upon the defendant, not only of going forward with evidence, but of actually overcoming such presumption by a preponderance of the evidence. As we have stated, this is contrary to the well-established doctrines of presumption and burden of proof, and can be justified, if at all, by a consideration of decisions binding upon the court below upon this precise question.

In the case of Travelers' Ins. Co. v. McConkey, 127 U. S. 661, 8 S. Ct. 1360, 32 L. Ed. 308, the action was brought upon a policy of accident insurance containing almost identical provisions with the accident provisions of the policy here in suit. At the trial the court charged the jury that the burden of proving death by suicide by a preponderance of the evidence rested upon the defendant, that the presumption was that death was not voluntary, and that the defendant, in order to sustain the issue of suicide upon its part, must overcome this presumption and satisfy the jury that the death was voluntary. That charge, as applicable to a case of this kind, was unequivocally approved by the Supreme Court, the court saying: "Did the court err in saying to the jury that, upon the issue as to suicide, the law was for the plaintiff, unless that presumption was overcome by competent evidence? This question must be answered in the negative."

Later this court applied the doctrine of the McConkey Case in Standard Life & Accident Ins. Co. v. Thornton (C. C. A.) 100 F. 582, 49 L. R. A. 116. This latter case was also an action upon an accident policy. The insured met death by either jumping or being thrown from a moving train. The sole issue, as here, was whether this violent death was accidental or suicidal. There was some evidence of charges which the deceased consid-

ered detrimental to his character, and of lack of employment and despondency. It was there urged that the court erred in charging the jury that the burden of proof was upon the defendant to establish by a preponderance of the testimony that the decedent came to his death with suicidal intent. Judge Day (later Mr. Justice Day), in rendering the opinion of this court, approved the presumption against suicide and said: "This presumption must stand in the case, and be decisive of it, until overcome by testimony which shall outweigh the presumption. It casts upon the defendant who claims that the death was intentional the burden of establishing it by a preponderance of testimony."

Similar doctrines have been announced and applied by the Circuit Courts of Appeals of other circuits in cases where the facts and circumstances attending the death were consistent with accident or could reasonably be reconciled with the hypothesis of accidental cause. Parrish v. Order of United Commercial Travelers, 232 F. 425 (C. C. A. 4); Tabor v. Mutual Life Ins. Co., 13 F.(2d) 765 (C. C. A. 4); Mutual Life Ins. Co. v. Hatten, 17 F.(2d) 889 (C. C. A. 8). Compare Fidelity & Casualty Co. of N. Y. v. Love, 111 F. 773 (C. C. A. 5); U. S. Fidelity & Guaranty Co. v. Blum, 270 F. 946 (C. C. A. 9).

The charge to the jury in the court below was quite manifestly carefully prepared with these authorities in mind. So far as we are advised, the McConkey Case has never been criticized in the Supreme Court, and the Thornton Case has not been qualified nor overruled in this circuit. The former is binding upon this court, and both were binding upon the District Court. The doctrine announced in both thus becomes the law of all cases presenting the identical question. The situation is a most appropriate one for application of the doctrine of stare decisis. If this doctrine means, as was said in The Madrid (C. C.) 40 F. 677, 679, "that when a point has been once settled by judicial decision it forms a precedent for the guidance of courts in similar cases," precedents which cannot be distinguished should be followed until modified or overruled, and the interests of uniformity, certainty, and stability in the law thus promoted. Certainty of a rule is often of equal importance with theoretical accuracy. Myers, Treas., v. Rose Institute, 92 Ohio St. 238, 249, 110 N. E. 929; White v. Denman et al., 1 Ohio St. 110, 115.

We are unable to satisfactorily distinguish the case of Travelers' Ins. Co. v. McConkey in the Supreme Court, or more espe-

cially *Standard Life, etc., Co. v. Thornton*, in this circuit, from the present action, and although, except for these cases, the charge would not seem to us properly to apply the abstract principle of law, we cannot say that the court erred in following the doctrine announced by these decisions.

The judgment must therefore be affirmed.

DENISON, Circuit Judge. I concur in thinking that the lower court was, and this court is, bound by the McConkey Case, and hence that there was no error; but the peculiar character and effect of this "presumption of nonsuicide" perhaps justify further comment. Its origin seems to be in early cases, which had occasion to and did decide (rightfully, of course) that there is no presumption of suicide, and which then assumed that therefore there is a presumption of nonsuicide—an obvious non sequitur. All authorities agree that in a death action upon an accident policy, and where suicide is not pleaded as an affirmative defense, the burden of proof is on plaintiff to establish that the death *was* by accident, and hence by inclusion was *not* by suicide. We may go further, and concede that, in case there appeared a death by violence, with no facts whatever tending to show either accident or suicide (if such a case can be imagined), human experience would justify an inference which might become such a presumption as to require the insurer to put in some proof, tending to show suicide, or else suffer a directed verdict; but, after all the facts and circumstances appear, and some support one and some the other of the two opposing theories, no room remains for any presumption to have any force. The question is at large on the proofs, and the burden of proof remains on plaintiff.

What it seems to me must be "the true doctrine" is well stated by Judge Faris in the Van Crome Case, supra, 11 F.(2d) page 352. And see Wigmore, supra, §§ 2491, 2492. The developing clarification of the true force of this "presumption of nonsuicide," indicated by the references just made, may find analogy in the "presumption of due care" and its disappearance from the evidential field. In an action based upon a highway railroad crossing accident, the burden is on defendant to show plaintiff's contributory negligence, and hence its antithesis, due care, is to be assumed until overcome. In this procedural sense there is such a presumption; and it has often been spoken of by the Supreme Court (Baltimore & Potomac R. R. Co. v. Landrigan, 191

U. S. 461, 474, 24 S. Ct. 137, 48 L. Ed. 262) and by this court as if evidence for plaintiff on that issue; but plainly, if it were substantial evidence, a verdict for defendant in that type of case never could be directed. In B. & O. R. R. v. Goodman (C. C. A.) 10 F.(2d) 58, 59, this court referred to that presumption in a way that might seem to indicate that we regarded it as some proof of due care. The Supreme Court (275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. 167, 56 A. L. R. 645) held that contributory negligence conclusively appeared, and so necessarily denied evidential force to this "presumption." See, also, Paramore v. R. R. (C. C. A. 8) 5 F.(2d) 912, 915.

In such a case as we have here I doubt whether there is even any "evidentiary inference." True, sane men do not commonly kill themselves; but often they do; and human experience teaches that existing or imminent burdens may be so fearsome that to some minds self-destruction seems the easy way out and the natural course to take. Here there was proof tending to show that the overturn of the auto could not have occurred, save by the driver's intentional turning off the road, and so suicide must have been intended, and there was proof tending to show that death would not follow such an accident, unless by chance, but only injury and pain, and so suicide could not have been intended. There were circumstances to the contrary of each of these inferences. Proofs indicated a strong, if not overwhelming, motive for insured to take his life, and others indicated that he would have fought courageously for vindication and would have scorned suicide as confession. Upon such a record it was for the jury to say whether the conclusion of accident was supported by the preponderance of inferences; and I cannot see how any presumption, or even inference, as to the action of the average man under average circumstances could help the jury to determine the action of *this* man under *these* circumstances.

In this case, as in the McConkey Case, it seems to me that, in spite of the protestations to the contrary, the burden of proof—the risk of nonpersuasion—was shifted to defendant. As I read the charge of the trial court in the McConkey Case, it was that the burden of proof to show accident, rather than suicide, was on the plaintiff, but that, if the evidence of each was equally balanced, then "the law was for the plaintiff." The Supreme Court approved both of these conclusions, plainly not regarding them as inconsistent; but the conflict of view revealed by

the cases cited in Judge HICKENLOOP-ER'S opinion shows that the two conclusions are not easy to reconcile.