**EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES v. SIEG.**

**GUARDIAN LIFE INS. CO OF AMERICA v. SAME.**

**JOHN HANCOCK MUT. LIFE INS. CO. OF BOSTON, MASS., v. SAME.**

Nos. 5723–5725.

Circuit Court of Appeals, Sixth Circuit.

Nov. 10, 1931.

F. J. Wright and W. I. Vorys, both of Columbus, Ohio (Vorys, Sater, Seymour & Pease, of Columbus, Ohio, Alexander & Green, of New York City, and Arnold, Wright, Purpus & Harlor, of Columbus, Ohio, on the brief), for appellants.

Charles S. Sheppard, of Cambridge, Ohio, for appellee.

Before DENISON, HICKS, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge.

Plaintiff below, here appellee, brought a separate action upon each of three policies of life insurance upon the life of Joseph L. Sieg, her husband. In her petition and proofs plaintiff relied, to establish the death of the insured, upon the presumption which is said to arise from seven years' unexplained absence, without tidings after search, and without communication by the insured with those who would have been likely to hear from him in the interim had he been living. Davie v. Briggs, 97 U. S. 628, 633, 634, 24 L. Ed. 1086. The defense assailed the contentions both that the absence was unexplained and that the plaintiff was without knowledge of the whereabouts of, or tidings from, the insured. Thus it was claimed (1) that the absence was fully accounted for by the fact that the insured was a defaulter and a fugitive from justice, and (2) that the insured

had gone from Pittsburgh to Florida, and from that state had communicated with his brother, Francis Sieg, in Americus, Ga., a fact which it was also claimed was known to plaintiff. The delivery of sufficient proofs of loss to the several companies was also denied. The jury returned verdicts for the plaintiff in all the cases, which were consolidated for trial, judgments were entered thereon, and the defendants appeal.

■ The proofs of loss submitted to the defendants consisted of affidavits setting forth the alleged unexplained absence. The first claim of error to be considered is that the court permitted the plaintiff to offer these proofs of loss in evidence over the objection of the defendants. Continental Life Ins. Co. v. Searing, 240 F. 653 (C. C. A. 3). Inasmuch as the defendants denied the making of proofs of loss, and since the court was careful not to admit such proofs in evidence generally, but limited the purpose and effect of admitting them by instructions that they might be considered solely as showing "notice and demand and nothing else," we are of the opinion that no prejudicial error was committed in this connection. It is not to be assumed that the jury gave any effect whatever to the affidavits as proof of the fact alleged therein, contrary to the specific instructions of the court not to do so.

■ It is next claimed that the court erred in admitting in evidence the opinions of two medical men (presented as experts) as to the possible and probable results of long-continued or chronic infection of the middle ear, the record containing no evidence that this condition (which had existed several months prior to the insured's disappearance) persisted up to the time of such disappearance, or had become chronic in the sense covered by the hypothetical question. We are of the opinion that this evidence was improperly admitted. The facts assumed as the basis for a hypothetical question must be established by evidence, or be reasonably deducible from other facts which are in evidence. Erie R. Co. v. Linnekogel, 248 F. 389 (C. C. A. 2). Compare Denver & R. G. R. Co. v. Roller, 100 F. 738, 754, 49 L. R. A. 77 (C. C. A. 9). Where the opinion of the expert is predicated upon a mere possibility of the happening of a future event, or of the existence of a fact as to which there is no direct testimony, such opinion is of too remote probative force to be helpful. Compare Hardy-Burlingham Mining Co. v. Baker, 10 F.(2d) 277 (C. C. A. 6), and cases there cited.

■ Appellants also claim error was committed by the exclusion of secondary evidence of the contents of a telegram said to have been sent by the plaintiff to Francis Sieg, brother of the insured, in Americus, Ga., on or about May 19, 1921 (the alleged disappearance having taken place on December 17, 1920). This telegram is said by the proffer to have read: "Insurance people here. Be careful. Do not write until you hear from me later. (Signed) Golda." Upon proof that the original was unattainable, lost, or destroyed, we see no reason why such secondary evidence of the contents of the writing was not admissible. The witness Wheeler testified that he made a copy of the telegram from the original in the office of the Western Union Telegraph Company in Pittsburgh, and that it was in the handwriting of the plaintiff. The sending of the message was flatly denied. The issue thus raised should have been submitted to the jury, but with all the available evidence before it, including the alleged language of the message. If the jury found the telegram was in truth sent, this fact would be highly prejudicial to the plaintiff's cause of action. If the plaintiff were believed, the evidence admitted would be of no effect.

■ Appellants also assert error in the exclusion by the court, over the objection of the defendants, of secondary evidence as to the alleged amount of the defalcation of Joseph L. Sieg. Witnesses were permitted to testify that Sieg's shortage was "in excess of several thousands of dollars," but the fact that it was in excess of $12,000 was excluded. The books of account had since been lost, but there was available the testimony of one Verne George, who had come to Pittsburgh and had taken over the office of Sieg's employer there on the day following Sieg's disappearance. The books were audited at that time under Mr. George's supervision, as well as by the firm of Zopher L. Jensen & Co. on behalf of the sureties. The report of the latter company to the United States Fidelity & Guaranty Company, surety for the period from July 1, 1920, through December 17, 1920, showed an amount of defalcation during that period, after specific deductions, in an amount in excess of $6,000. Testimony of Mr. George was offered to the effect that separate audits likewise disclosed a defalcation prior to July 1, 1920, in the amount of at least $6,000, which was paid by the National Surety Company. While the summary of an accountant of an examination made by him is ordinarily inadmissible except upon production of the books and documents from

which such summary was made, and an opportunity for opposing counsel to examine or use such books to verify the correctness of the accountant's report, the books here involved were lost and could not be produced. The witnesses were wholly disinterested as concerned the then present controversy. At the time of his disappearance the insured was indebted at the bank in an amount of nearly $3,000. His salary was $5,000 per year, and he had less than $100 in cash. He had tried to borrow money, and had failed. The evidence offered thus constituted not only the best evidence available, but the only means of establishing a defalcation, which, to a man with a family and in the circumstances above recited, must have seemed staggering in amount. To permit evidence that the defalcation was "in excess of several thousand dollars," which the plaintiff attempted to meet by testimony that the insured might have borrowed money in a "reasonable amount" had he desired to do so, was to deprive the defendants of a large measure of the probative value of their evidence. This demonstrates the prejudice thereby suffered.

[6-8] Lastly, it is claimed that the trial court erred in its charge to the jury in certain respects to which proper exception was taken. Since a new trial is to be granted for the errors already noticed, it is perhaps unnecessary to go into this assignment of error in greater particularity than to say that in our opinion the charge of the court, as a whole, assumed that the presumption of death had been created, and gave to that presumption an evidentiary value until and unless the defendants produced evidence which "overcame such presumption," and from which the jury might "deduce a reasonable probability inconsistent with and contrary to the theory of presumed death." In so charging we think the court inadvertently fell into error.

The charge as given wholly fails to recognize the fundamental difference between the presumption, as such, and the proof of those facts upon which the presumption is predicated. In the present case the presumption is that of death of the insured. It is created or arises only when an unexplained absence of seven years, without tidings, has been "established." This fact may be taken as established where it is conceded by the defendant, where no reasonable juror could conclude otherwise, or where the evidence offered by the plaintiff to sustain the contention is credited by the jury; but, clearly, the burden of proving such fundamental facts

remains always with the party in whose favor the presumption operates. If substantial evidence be offered tending to rebut the facts upon which the presumption is founded, the issue "is at large on the proofs," and if the party in whose favor the presumption is claimed does not sustain the burden of proof resting upon him, to prove these facts by a preponderance of the evidence, the presumption is not overcome or rebutted—it simply has never been created.

Doubtless there may be situations in which the data giving rise to a presumption are undisputed or established, and where it is sought to overcome or rebut such presumption by direct evidence of the nonexistence of the fact presumed. Such a situation would be presented in the case of the presumption of death here involved had the defendant sought to prove, not that the absence was explained or that tidings had been received within the seven years, but that the insured had been seen and recognized, in full health and life, in a distant city within such period, that is, that he was not in fact dead. This was not the situation in the case at bar. Here no presumption would come into being until the plaintiff had established by a preponderance of the evidence not only the absence of seven years but also that such absence was unexplained and without tidings. Until then there was no presumption to overcome or rebut. The charge given was therefore inapplicable to any issue properly in the case, and assumed, without submission to the jury, the proof of facts which were in dispute.

It is unnecessary in the present case to consider whether or not "presumptions should be classified according to the reasons which justify their creation and existence" (Professor Morgan's view, op. ci. infra), or whether there are those in the entire field of presumptions which are not merely procedural, but which also affect the burden of persuasion. See "Some Observations Concerning Presumptions," by Professor Edmund M. Morgan, XLIV Harvard Law Review, 906, issue of April, 1931; and "The Effect of Rebuttable Presumptions of Law Upon the Burden of Proof," by Professor Francis H. Bohlen, 68 Univ. of Pa. Law Review 307, reprinted as chapter XV of his "Studies in the Law of Torts." These questions are not now presented; but even if the facts upon which the presumption is founded were to be considered as fully established, and the defendants had then sought to rebut the fact presumed, we must seriously doubt whether this particular presumption is within any of the

classes which can be regarded as affecting the burden of persuasion. It would seem more properly aligned with the purely procedural presumptions which disappear, as presumptions, when evidence is produced to refute them, although they may continue in the case as permissible inferences. Compare New York Life Ins. Co. v. Ross, 30 F.(2d) 80 (C. C. A. 6); Fuller v. New York Life Ins. Co., 199 F. 897 (C. C. A. 3).

For the reasons above stated, the judgment of the District Court is reversed, and the cause is remanded for a new trial.