## EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES v. SIEG.

## GUARDIAN LIFE INS: CO. OF AMERICA v. SAME.

## JOHN HANCOCK MUT. LIFE INS. CO. OF BOSTON, MASS., v. SAME.
### Nos. 6538, 6536, 6537.

Circuit Court of Appeals, Sixth Circuit.
Jan. 8, 1935.

F. J. Wright and W. I. Vorys, both of Columbus, Ohio (Vorys, Sater, Seymour & Pease, Arnold, Wright, Purpus & Harlor, and Earl F. Morris, all of Columbus, Ohio, on the brief), for appellant.

C. S. Sheppard, of Cambridge, Ohio, for appellee.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

The appellee under the several designations above indicated brought separate actions below upon insurance policies issued by the several appellants upon the life of her husband, Joseph L. Sieg. The cases were consolidated for trial, and from judgment for the plaintiff on verdict of the jury the defendants have appealed.

The plaintiff, to establish the death of the insured, relied on his seven years' unexplained absence, without tidings. The case is here for the second time. A former judgment for the plaintiff was reversed, Equitable Life Assurance Society of United States v. Sieg (C. C. A.) 53 F.(2d) 318, 320, for error below in receiving medical evidence of the insured's physical condition without proof that such condition persisted up to the time of disappearance, in excluding secondary evidence of a telegram alleged to have been sent by the plaintiff to the insured's brother some months after the disappearance, in excluding secondary evidence bearing upon alleged defalcations of the insured, and for errors in the charge of the court in assuming an unexplained absence of seven years without tidings when the lack of explanation and the want of tidings were controverted. At the second trial these errors were avoided.

The principal error here assigned relates, as in the first case, to the nature of the so-called presumption of death that is said to arise from an unexplained absence of seven years without tidings after search, but presents a somewhat different phase of the problem than did the earlier appeal. In a closely reasoned analysis of our former opinion appellants' counsel point out, we think correctly, that there are two distinct parts to every presumption of the nature here involved, the base and the presumption itself. The base must first be established. When and if it is the presumption is created or arises. A presumption is not evidentiary in nature; it never shifts the burden of persuasion; and, even if it be conceded that some presumptions do, the presumption of death places upon the party against whom it operates only the burden of going forward with the evidence. From this it is argued that all of these principles spring from a single concept; namely, that the presumption is solely and exclusively a procedural device to be used by the judge and by him alone in allocating the burden of going forward with the evidence, and is the concern of the court rather than of the jury.

In our previous opinion, however, we said: "It [the presumption] is created or arises only when an unexplained absence of seven years, without tidings, has been 'established.' This fact may be taken as established where it is conceded by the defendant, where no reasonable juror could conclude otherwise, or where the evidence offered by the plaintiff to sustain the contention is credited by the jury; but, clearly, the burden of proving such fundamental facts remains always with the party in whose favor the presumption operates. If substantial evidence be offered tending to rebut the facts upon which the presumption is founded, the issue 'is at large on the proofs,' and if the party in whose favor the presumption is claimed does not sustain the burden of proof resting upon him, to prove these facts by a preponderance of the evidence, the presumption is not overcome or rebutted—it simply has never been created."

608

■ What was there said is, of course, susceptible of but one interpretation, i. e., that where by substantial evidence the elements at the base of the presumption, such as absence, its duration, the lack of explanation for it, or the nonreceipt of tidings, are both supported and challenged by substantial evidence, the question is one for the jury, and, if the jury finds that the basis for the presumption exists, the presumption is created or is said to arise. The appellants would, however, have us go further, classify evidence as to its kind, and, if the evidence that is adduced to attack the base of the presumption is of the kind that explains and accounts for departure and absence on an hypothesis other than that of death, the court below should be required to direct a verdict for the defendant. This is, however, but another way of saying that we should weigh the evidence, for the weight of evidence—its persuasiveness—depends as much upon its character as its amount, and we will not depart from our long-established rule in that respect. Moreover, even were we persuaded of any merit to the contention, what was said in our former opinion has become the law of this case. "Certainty of a rule is often of equal importance with theoretical accuracy." New York Life Insurance Co. v. Ross, 30 F.(2d) 80, 83 (C. C. A. 6). Having in effect said, upon the urging of these appellants, that the existence of a base to the presumption is a question for the jury upon conflicting evidence, we can conceive of nothing that would so tend to destroy uniformity, certainty, and stability in the law as to now indicate to the court in this case that the issue was for its determination rather than for that of the jury. We find no error, therefore, in the denial of the request by the defendant for a directed verdict.

■ The trial judge refused to charge the jury that, if they believed the evidence offered in behalf of the defendants tending to explain the disappearance and absence of the insured, the plaintiff was not entitled to recover, for the reason that the requested instruction was not an accurate statement of the law. We find no error in this ruling. The challenging evidence tended to show defalcations, a casual statement of desire to go to Argentina made long before the disappearance, and some criticism of his wife by the insured. The jury might believe all of these facts to be true, and yet not believe them sufficient to explain the insured's disappearance, the severing of the natural ties of family, the sacrifice of his place in the community, and the friendship of the many persons who came to testify at the trial, and the inference of guilt which such disappearance permits to be drawn.

■ In our previous opinion it was indicated that the District Court at the first trial fell into error because it assumed that the presumption of death had been created, and gave to that presumption an evidentiary value until and unless the defendants produced evidence which overcame such presumption, or, in other words, that the court failed to recognize the fundamental difference between the presumption as such and the proof of those facts upon which the presumption is based. Notwithstanding, the trial judge here charged the jury that, if the plaintiff had satisfied them by a preponderance of the evidence that the facts necessary to establish the base of the presumption were true, the law under such conditions presumes the insured to be dead, and "it has become a rule of law, not of evidence but of law, that a person who has disappeared and who has been continuously absent, unheard of, with the absence unexplained, without tidings thereof, for a period of more than seven years, the law presumes the person to be dead." This portion of the charge was excepted to on the ground that it made the presumption a rule of evidence rather than a rule of procedure. If this language had stood uncorrected and without modification, there might be merit to the defendants' grievance.

There followed, however, a long colloquy between court and counsel in the presence of the jury, during which the court gave the jury to understand that that portion of the charge which referred to the presumption of death had nothing to do with its deliberations, that it was not evidentiary in any sense, nor part of the issue for them to decide, and that it was merely informative and explanatory, indicating, if they should find the other facts in favor of the plaintiff, how such findings would permit a recovery upon a contract which provided for payment in case of death. The colloquy ended with this statement by the court: "I have told them on at least two and maybe three occasions during the progress of this trial the facts which they must find by a preponderance of evidence before they are entitled to return a verdict for the plaintiff, and I have told them that. I have said nothing to them about any presumption of law, rule of law, known under the heading of the presumption until the close of the charge." And to the jury: "I sought, gentlemen of the jury, simply to explain to you how, by finding the facts, if you do find them, that have been

enumerated to you, how that might fix the liability and bring about a recovery on a contract that is not recoverable upon until death. Presumption has not anything to do with it. That was simply explanatory."

In the former opinion in the case there was an illuminating, though academic, discussion of presumptions as to whether they should be classified according to the reasons which justify their creation and existence, which concluded: "We must seriously doubt whether this particular presumption is within any of the classes which can be regarded as affecting the burden of persuasion. It would seem more properly aligned with the purely procedural presumptions which disappear, as presumptions, when evidence is produced to refute them, although they may continue in the case as permissible inferences"—citing New York Life Insurance Co. v. Ross, supra, and Fuller v. New York Life Insurance Co., 199 F. 897 (C. C. A. 3). Even were we now to assert as decisive of the case the view that the presumption had disappeared, but that death as a permissible inference remained, we are of the opinion that the colloquy and supplemental instructions which arose therefrom made it sufficiently clear that the jury finding the facts of disappearance, want of explanation and tidings, was permitted by the law, though not compelled, to find that the insured was dead. In so far as what was said by the court may have fallen short of precise and literal accuracy, upon an assumption of the soundness of our earlier dictum, the shortcomings of the instruction owed as much to the lack of definiteness in the objection and request as to any confusion in the mind of the court, and we cannot assume that a more accurate request would have been refused.

The difficulty inherent in the finely drawn distinction urged upon us was fully recognized by the court in the Ross Case, where it was said: "In practical application of these rules, and for the proper understanding of the jury, it would seem merely a question of words—a method of phrasing the established rule—whether the court charges the jury that the presumption continues after evidence to rebut it has been introduced, but is rebuttable, or whether the jury be charged that the presumption is destroyed but a natural and legitimate inference arises from the evidence, or lack of evidence, to be given such probative effect as the jury deems proper in determining the issue." In the light of what was there said, the court in its earnest effort to correctly submit the issues to the jury was entitled to the aid of counsel, clearly and definitely expressed, before we, on familiar principles, can recognize error.

▇ Complaint is also made that the charge failed to recognize that defendants' evidence had attacked the presumed fact of death as well as the elements at the base of the presumption. Even were we to grant that this point was properly reserved for review, which we do not, we fail to see in what manner the defendants were prejudiced by the alleged error. The attack upon the fact of death consisted of the testimony of Wheeler, private investigator, who testified that in May, 1921, six months after the insured's disappearance, he received photostatic copies from the United States Post Office at Atlanta, Ga., of letters written by the insured from Jacksonville, Fla., and addressed to the plaintiff and the insured's brother. This evidence was offered for two purposes. If the letters reached the addressees, and it is to be inferred that they did, then they had tidings. It was therefore offered against the establishment of one of the elements at the base of the presumption. Regardless, however, of whether the letters were ever received and became tidings, they are claimed to have been written by the insured six months after his disappearance, and it is contended that their existence is strong circumstantial evidence that the insured was alive at that time, and not in fact dead, within the seven-year period relied upon by the plaintiff to establish the presumption. It is clear, however, that the jury gave no credence to Wheeler's story. They certainly rejected his evidence entirely on the subject of tidings. It is inconceivable that they would have rejected Wheeler's story for one purpose and have accepted the same story for another.

▇ Error is claimed in the court's receiving in evidence rules of the Post Office Department regarding inspection of mails by unauthorized persons. Wheeler had testified that two sets of letters addressed to the plaintiff and to the insured's brother were shown to him at the post office at Atlanta, and that he later received from the postmaster photostatic copies of these letters. The credibility of this statement was attacked, not only by the denial of the addressees that the letters were received, but by the testimony of the postmaster and superintendent of mails at Atlanta that they had no recollection of Wheeler or of any such permission being given, that the post office had no equipment for the making of photostatic copies, and that mail from the South would not pass through the Atlanta post office, whose only function with respect

to it was to transport it. The photostatic copies were not produced, and no explanation is to be found in the present record as to what became of them. In this environment we cannot think that the receipt of the challenged evidence was error, or, if so, that it was prejudicial. The care with which the post office establishment guards the privacy of the United States mails is so clearly part of our stock of common knowledge that the rules could add little to the information already possessed by the jury.

We see no merit to the complaint that the plaintiff was permitted to testify that since her husband's death she had paid the premiums on the policy. The petition had alleged without any specification as to time that either the plaintiff or her husband had paid the premiums up to the time the suit was started. That the plaintiff had herself paid the premiums was clearly in permissible refutation of an inference that her husband was alive and had paid them himself.

We find no other assignments of error sufficiently meritorious to warrant discussion, and the judgment below is affirmed.